# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

GARNER PROPERTIES & MANAGEMENT, LLC;
CHRISTOPHER L. GARNER; &
OLIVIA HEMARATANATORN.


          Plaintiff,

                                      Case No.

v.                                       HON:

CITY OF INKSTER; GINA TRIPLETT;
MCKENNA ASSOCIATES, INC.; & JIM WRIGHT


          Defendants.

_____

THE LAW OFFICES OF AARON D. COX, PLLC
Aaron D. Cox (P69346)
Co-Counsel for Plaintiffs
23380 Goddard Rd.
Taylor, MI 48180
734-287-3664

MARK K. WASVARY, P.C.
Mark K. Wasvary (P51575)
Co-Counsel for Plaintiffs
2401 W. Big Beaver Rd., Suite 100
Troy, MI 48084
248-649-5667

_____

## CLASS ACTION COMPLAINT

GARNER PROPERTIES & MANAGEMENT, LLC; CHRISTOPHER L.

1

GARNER, individually; and OLIVIA HEMARAT ANATORY, individually, on behalf of all others similarly situated, by and through the undersigned attorneys from THE LAW OFFICES OF AARON D. COX, PLLC and MARK K. WASVARY, P.C., states for this Complaint as follows:

## I. NATURE OF THE ACTION

1. This action is brought on behalf of a class of all persons who own residential real property in the City of Inkster (the "City") and have been fined for failing have a certificate of occupancy for a rental property.

2. The State of Michigan under the Home Rule City Act (MCL 117.1 et seq.) permits municipal corporations like the City to adopt certain laws, codes, or rules for building maintenance issues.

3. MCL 117.3 (K) specifically addresses the adoption of certain building codes:

> Except as otherwise provided under the Stille-DeRossett-Hale single state construction code act, 1972 PA 230, MCL 125.1501 to 125.1531, a city may adopt a law, code, or rule that has been promulgated and adopted by an authorized agency of this state pertaining to fire, fire hazards, fire prevention, or fire waste, and a fire prevention code, plumbing code, heating code, electrical code, building code, refrigeration machinery code, piping code, boiler code, boiler operation code, elevator machinery code, an international property maintenance code, or a code pertaining to flammable liquids and gases or hazardous chemicals, that has been promulgated or adopted by this state, by a department, board, or other agency of this state, or by an organization or association that is organized and conducted for the purpose of developing the code, by reference to the law, code, or rule in an adopting ordinance and without publishing the law, code, or rule in full. The law, code, or rule shall be clearly identified in the ordinance and its purpose

> shall be published with the adopting ordinance. Printed copies of the law, code, or rule shall be kept in the office of the city clerk, available for inspection by, and distribution to, the public at all times. The publication shall contain a notice stating that a complete copy of the law, code, or rule is made available to the public at the office of the city clerk in compliance with state law requiring that records of public bodies be made available to the general public.

4.    The City has adopted a number of codes pursuant to the Home Rule City Act and MCL 117.3 (K).

5.    One such code adopted by the City is the international property maintenance code (the "IPMC"). The City adopted this code in their ordinance §150.001.

6.    The exact language of the ordinance adopting the IPMC is as follows:

> International Property Maintenance Code. A certain document, a copy of which is on file in the office of the City Clerk, the most recent edition of the International Property Maintenance Code, as published by the International Code Council, be and is hereby adopted as the Property Maintenance Code of the city for regulating and governing the conditions and maintenance of all property, buildings and structures; by providing the standards for supplied utilities and facilities and other physical things and conditions essential to ensure that structures are safe, sanitary and fit for occupation and use; and the condemnation of buildings and structures unfit for human occupancy and use, and the demolition of such structures as herein provided; providing for the issuance of permits and collection of fees therefor and each and all of the regulations, provisions, penalties, conditions and terms of said Property Maintenance Code on file in the office of the City Clerk are hereby referred to, adopted, and made a part hereof, as if fully set out in this section, with the additions, insertions, deletions and changes, prescribed herein as follows:

3

     (a)   Title.  These regulations shall be known as the Property Maintenance Code of the City of Inkster, hereinafter referred to as "this Code."

     (b)   Building Official.  The Building Official shall be designated as the code official and shall be the official in charge of the enforcement of this Code.

     (c)   Fees.  The fees for activities and services performed by the Building Official and/or his or her designee in carrying out their responsibilities under this Code shall be approved by resolution of the City Council from time to time and shall be filed in the office of the City Clerk.

     (d)   Failure to comply.  Any person who shall violate a provision of this Code or continue any work after having been served with a stop work order, except such work as that person is directed to perform to remove a violation of unsafe conditions, shall be guilty of a misdemeanor and shall be liable for a fine of not less than $100 nor more than $500.

7.     The IPMC, as adopted by the City, governs the regulation of maintaining existing residential real property within the City.

8.     The City's adoption of the IPMC though fails to identify the specific version of the IPMC that was adopted. The City's adoption of the IPMC fails on its face for this reason and pursuant to MCL 117.3 (K).

9.     The City has also enacted ordinances that regulate the operation of rental housing within the City. Pursuant to these ordinances an owner of investment real estate who wants to rent his property must register the property, obtain an inspection of the property, complete necessary repairs under the applicable code, and thereafter obtain a certificate of compliance.

4

10. Inspections under these codes and ordinances are performed by individuals trained in these codes and their enforcement (the "Code Official"). The Code Official knows, or should know, the requirements of the IPMC and other applicable codes.

11. The City's inspection under these ordinances is governed by the City's adoption of the IPMC and the inspection requires compliance with the IPMC. Stated another way, an owner of rental property cannot obtain a certificate of compliance from the City until he passes an inspection pursuant to the IPMC.

12. The IPMC contains its own set of procedural guidelines that the City must comply with. For example, prosecution of violations for the failure to comport with an inspection performed under the IPMC cannot be issued until a person has failed to comply with a notice of violation served in accordance with Section 107 of the IPMC.

13. Section 107 of the IPMC sets forth the form of notices of violation:

> 107.2 Form. Such notice prescribed in Section 107.1 shall be in accordance with all of the following:
> 1. Be in writing.
> 2. Include a description of the real estate sufficient for identification.
> 3. Include a statement of the violation or violations and why the notice is being issued.
> 4. Include a correction order allowing a reasonable time to make repairs and improvements required to bring the dwelling unit or structure into compliance with the provisions of this code.
> 5. Inform the property owner of the right to appeal.

6. Include a statement of the right to file a lien in accordance with section 106.3.

14. The form of the notices as required by the IPMC are procedural due process requirements intended to provide the owner with adequate notice and an opportunity to be heard in the event of any dispute over the alleged violations of the applicable code. This is especially important where, as here, the violation for failing to comply with the IPMC (and therefore the City's codes requiring a certificate of compliance) is a strict liability offense (See IPMC Section 106.3).

15. The procedural guidelines required by the IPMC are conditions precedent to the issuance of any penalty as set forth in Section 106.3 of the IPMC. This procedure is vital to the fair administration of these codes to ensure that code officials are not refusing to acknowledge compliance of a property for items that are not required by the IPMC or other applicable code. For example, existing buildings are subject to the IPMC but are not subject to the new-construction codes; where a code official purports to require a new-construction code to be complied with on an existing building the IPMC specifically contemplates an owner's ability to challenge the alleged defect before the imputation of strict liability attaches for failing to comply.

16. Absent the procedural due process requirements of the IPMC the City and its Code Officials are free to require any number of unconstitutional and improper demands on homeowners who have no mechanism to challenge them.

6

This conduct would require homeowners to make repairs and/or capital improvements not required by the code, and at great personal expense, out of fear that the City will levy the homeowner's property or throw the homeowner in jail for failure to pay these improperly levied fines.

17.     The strict adherence to these due process principles is further required where, as here, the City charges violations for failure to comply with an inspection under the IPMC as misdemeanor criminal offenses.

18.     The due process requirements are further demonstrated as the IPMC's appeal process requires a standing independent board of appeals to hear these matters. Such board members cannot be employees of the jurisdiction. The IPMC specifically states that the purpose of the appeal is to dispute "that the true intent of this code or the rules legally adopted thereunder have been incorrectly interpreted, the provisions of this code do not fully apply, or the requirements of this code are adequately satisfied by other means."

19.     Despite these procedural guidelines required by the IPMC the City blatantly refuses to comply with them. Instead the City, in complete abrogation of the due process requirements of its own ordinances, issues civil infraction fines to the owners for failure to bring properties into compliance with the IPMC. They do so by issuing tickets for failing to obtain a certificate of occupancy under their local ordinances. In reality, the City's issuance of a civil infraction or misdemeanor

stems solely from the owner's alleged failure to comply with the IPMC inspection and regulations.

20.     While the City issues deficiency notices under its codes and ordinances and the IPMC, such notices never comply with Section 107.2 of the IPMC.

21.     The City first issues a property inspection report (the "PIR") that requests that the owner correct alleged code violations. These reports specifically allege failures to comply with the IPMC and associated codes.

22.     In the event the items contained on the PIR are not complied with the City issues a "Violation." The Violation references various City ordinances related to certificates of compliance.

23.     The sole reason a certificate of compliance would not be issued following an inspection is for a failure to meet the requirement of the IPMC.

24.     At no point in either PIR or the Violation does the City provide a correction order allowing a reasonable time to make repairs and improvements to bring the dwelling into compliance with the IPMC.

25.     At no point in either the PIR or the Violation does the City notify the property owner of his right to appeal under the IPMC.

26.     The absence of these notices to the Owner is a direct violation of the IPMC.

8

27.     The absence of these notices to the Owner precludes the issuance of any court action to enforce the alleged violations as set forth in Section 106.3 of the IPMC.

28.     The required notices are not provided to hundreds, if not thousands, of homeowners in the City who register their properties and attempt to comply with the IPMC.

29.     Despite the City's repeated and blatant refusal to comply with due process it issues hundreds, if not thousands, of civil infraction and misdemeanor violations to landowners and non-owners alike without informing them of their rights.

30.     The City then threatens these homeowners and non-owners with liens, demolition, daily fines, and even criminal liability in order to extort fines and fees from them to fund their cash-strapped municipality.

31.     Most are unaware of their rights to appeal or challenge the code official's determination of the applicability of the code, and the City failing to notify them of that right, they are forced to succumb to the power of the City and City Officials and pay countless fines and/or perform unnecessary repairs.

32.     Denying a homeowner the notice of their right to appeal the code official's interpretation and determinations under the IPMC has removed any possibility for raising a challenge by the homeowner to the code official's

determination or interpretation of the IPMC; in effect, giving the code official cart blanche to make any demand on the homeowner – even those not required by the IPMC – without recourse. In this fashion the homeowner has been completely deprived of any due process related to these proceedings.

33.     To the extent someone attempts to challenge the applicability of the code official's determination under the IPMC, they can only do so in court under the threat of further punishment. Even then, the court is neither permitted, nor in a position to, inquire into the reason for the home owner's failure to obtain a certificate of occupancy as it is a strict-liability offense as it pertains to the court. As such, the City's actions and inactions have removed any procedural impediment to confront the authority of the City or Code Official and is repetitively beaten into submission and forced to pay hundreds or thousands of dollars merely to be placed back into the same position – a property that is not in compliance with the IPMC and no way to challenge the City or Code Official's determinations under that code.

34.     The mere failure to provide the constitutionally required due process elements set forth in the IPMC in the City's notices is a violation of Plaintiffs' due process rights.

35.     The mere issuance of a ticket without complying with the administrative provisions of the IPMC violates Plaintiffs' due process rights.

36.     The removal of Plaintiffs' right to challenge the code official's determinations is a violation of Plaintiffs' due process rights.

## II.     WHAT HAPPENED TO PLAINTIFFS

37.     Plaintiffs incorporate the preceding paragraphs.

38.     The plight of Plaintiffs illustrates the dangers of the system set forth by the City as administered by the Defendants.

39.     Garner Properties & Management, LLC manages a property at 28253 Rosewood, Inkster, MI (the "Rosewood Property").

40.     On January 5, 2015 the City issued a Violation to Garner Properties & Management, LLC alleging the Rosewood Property did not have a certificate of occupancy and that the Rosewood Property was rented without a certificate of occupancy. **Exhibit 1**.

41.     The Violation failed to notify the alleged wrongdoer of their right to appeal the alleged defects as required by the IPMC.

42.     The Violation did not provide alleged wrongdoer with a reasonable time frame upon which to complete the repairs or improvements requested to come into compliance with the code as required by the IPMC.

43.     The City issued a PIR on January 20, 2015. **Exhibit 2**.

44.     The PIR failed to notify Garner Properties & Management, LLC and/or the owner of their right to appeal the alleged defects as required by the

IPMC.

45.     The PIR did not provide Plaintiffs with a reasonable time frame upon which to complete the repairs or improvements requested to come into compliance with the code as required by the IPMC.

46.     On January 29, 2015 Plaintiffs issued a letter requesting an appeal under of the Code Official's determination as permitted under the IPMC. **Exhibit 3**.

47.     Unbeknownst to Plaintiffs, the City, though Code Official Gina Triplett, had actually issued a ticket to Plaintiff Chris Garner/Garner Properties on January 26, 2015. **Exhibit 4**.

48.     On February 5th, 2015 the City's representative Jim Wright of McKenna Associates, acknowledged receipt of the appeal request and, rather than complying with the IPMC, provided code cites to support his position. Previously, on an unrelated property, the City has issued unilateral denials of Plaintiffs' appeal requests. **Exhibit 5**.

49.     Despite the City's deficiencies in providing for the due process mandated by their own ordinances and the IPMC, the City persisted with its prosecution against Plaintiff in Inkster's 22nd District Court.

50.     Plaintiff Chris Garner appeared at court as compelled on February 10, 2015, contested his liability, and was found strictly responsible for not obtaining a

certificate of occupancy for the Rosewood Property. The court ordered Mr. Garner to pay a fine of $250.00.

51.     Mr. Garner was now put in an even more precarious position than simply attempting to challenge the code official's determinations under the IPMC and faced contempt of court, or worse – a bench warrant being issued for his arrest, if he failed to pay the fine. Facing the loss of his personal freedoms Mr. Garner was now compelled against his will to pay the fine.

52.     It is the policy and custom of the City to illegally enforce the IPMC and its own city code (the "City Code") in order to deprive owners of rental properties in the City of their constitutional right to due process and drive revenue growth through tickets illegally issued as set forth herein.

53.     On or about August of 2015 the City of Inkster adopted a modified ordinance in §150.001 et seq. The modifications to the ordinance made what used to be civil infraction violations into misdemeanor violations.

54.     On or about March 13, 2017 the City of Inkster issued a misdemeanor criminal violation to Christopher L. Garner related to a property at 26391 W Hills Drive, Inkster, MI ("Hills Property"). **Exhibit 6**.

55.     The ticket to Mr. Garner was issued without probable cause where Section 155.297 of the City's codes sets any zoning violation as applying to the Owner.  The definition of "Owner" as defined by the City's code section 150.231 is

"Any person, agent, firm or corporation having a legal or equitable interest in the premises." The definition of "Owner" as defined by the City's code section 10.05 is "…any part-owner, joint-owner, tenant-in-common, tenant-in-partnership, joint-tenant, or tenant-by-the-entirety…."

56.     The Hills Property is owned by Great Lakes Affordable Housing, LLC, as is evidenced on the Rental Registration filed by the owner with the City on or about October 1, 2014. **Exhibit 7.**

57.     The application further lists Garner Properties & Management, LLC as the applicant and agent of Great Lakes Affordable Housing, LLC.

58.     Mr. Garner signed the application as the managing member of Garner Properties & Management, LLC only and has no personal obligation to the Hills Property or to the City.

59.     On or about January 25, 2017 the City had previously sent a notice of alleged violation to Garner Properties & Management, LLC and addressed to Garner Properties & Management, LLC and Great Lakes Affordable Housing, LLC. **Exhibit 8**.

60.     The notice was never sent to Christopher L. Garner, and despite the City's clear knowledge who the owner and agent of the Hills Property were, the City then issued a criminal violation to Mr. Garner individually.

61.     Mr. Garner was required to come to court and be arraigned, under the

14

penalty of imprisonment and fines for this issue.

62. Mr. Garner was forced to retain counsel and defend himself over these allegations, which were subsequently dismissed after Mr. Garner filed a motion raising these issues. **Exhibit 9**.

63. The same thing that happened to Mr. Garner also happened to Plaintiff Olivia Hemaratanatorn. Ms. Hemaratanatorn is the managing member of Comich, LLC. Comich, LLC owns property in the City of Inkster that is registered as a rental. That property is commonly known as 420 Sunningdale, Inkster, MI 48141 (the "Sunningdale Property").

64. Despite the City's knowledge of Comich, LLC's ownership it issued a criminal violation to Ms. Hemaratanatorn and is subjecting her to threats of criminal liability for same.

### III. PARTIES

65. Plaintiff incorporates the preceding paragraphs.

66. Plaintiff Christopher L. Garner is the managing member of Garner Properties & Management, LLC. Mr. Garner is an adult individual who resides in Wayne County, Michigan.

67. Plaintiff Olivia Hemaratanatorn is an adult individual and the managing member of Comich, LLC. Ms. Hemaratanatorn resides in California.

68. Defendant City of Inkster is a municipal corporation located within

Wayne County in the State of Michigan.

69.     Defendant Gina Triplett is a code official for the City of Inkster and is the person responsible for issuing violations to owners of real property for their failure to comply with the IPMC.

70.     Defendant Jim Wright is an agent or employee of Defendat McKenna Associates, Inc, a Michigan Corporation. McKenna Associates, Inc. and Jim Wright are responsible for administering the IPMC and Inkster's code inspections of real property and the issuance of deficiency reports in the City of Inkster.

## IV.     JURISDICTION AND VENUE

71.     Plaintiff incorporates the preceding paragraphs.

72.     Jurisdiction by this Court over Plaintiffs' constitutional claims is proper pursuant to 28 USC § 1343 and 28 USC § 1331.

73.     To the extent necessary, supplemental jurisdiction over any state law claims is proper pursuant to 28 USC § 1367.

74.     Venue is proper in this District pursuant to 28 USC § 1391 because the District is where the Defendants reside, where a substantial part of the events and omissions giving rise to Plaintiff's claims occurred, and where a substantial part of all properties subject to the action are located.

75.     As additional Class Plaintiffs are identified, this District will remain the most convenient venue in which all future cases can be considered and

16

consolidated as necessary.

## V. CAUSES OF ACTION

### COUNT ONE
### VIOLATION OF DUE PROCESS
*(Failure to provide a proper notice and due process as required under the IPMC)*

76.    Plaintiff incorporates the preceding paragraphs.

77.    It is unconstitutional to deprive a person of their property without due

process of law. U.S. Constitution Article 5; Michigan Constitution 1963 Article 1,

Section 17.

78.    The IPMC is intended to provide an owner of rental-real property with

the minimum due process recognized by the United States and State of Michigan

constitutions.

79.    The IPMC requires that the homeowner be provided with a notice of

deficiencies and a reasonable time to make repairs or improvements in order to

comply with the applicable code and obtain a certificate of compliance.

80.    The IPMC requires that the homeowner be provided with a procedural

means to challenge the City's Code Official and their interpretation or application

of the IPMC as to the homeowner.

81.    The IPMC requirements as set forth in that code and in this complaint

function as a required minimum due process afforded to the homeowner before any

legal or other court action can be taken by the City against the homeowner. In this

fashion, they are conditions precedent to the City's ability to lawfully issue any fine, fee, or other penalty against the homeowner.

82.     Both the IPMC and the City's code of ordinances makes the failure to obtain a certificate of compliance a strict-liability offense. As such, the court hearing these violations is legally prohibited from hearing any reason for the failure to comply and cannot address any challenges a homeowner may have to the applicability, construction, or interpretation of the IPMC.

83.     Equally important is that the IPMC requires their appeals to be heard by an impartial panel of individuals who are not employed by the City and whom have experience in the relevant areas being challenged. The Court is not, and can never be, in a position to provide the expertise and impartiality contemplated by the IPMC and the City's own ordinances.

84.     The form and manner of court hearings are not the equivalent of a proper appeal under the IPMC and therefore deprive homeowners of a meaningful opportunity to be heard and deprive them of any due process.

85.     The City's failures as set forth in this Complaint are violations of Plaintiffs', and those similarly situated' s, constitutional due process rights:

  a.  The City's notices fail to provide a reasonable time period in which to correct the alleged deficiencies;

  b.  The City's notices fail to notify the homeowner of his constitutional

right to appeal the code official's interpretation of the IPMC;

c.  The City's notices fail to notify the homeowner that the City may lien his property for failing to comply;

d.  The City has never established an appellate process as required by the IPMC;

e.  The City completely ignores requests to challenge the code official's interpretation of the IPMC even when presented with a request to do so; and

f.  The City continues to issues fines, fees, and levies to homeowners without completing these conditions precedent.

86.  The due process rights of Plaintiffs and others similarly situated have been violated by the City, its Code Officials, and McKenna Associates, Inc. and as a result Plaintiffs have incurred monetary and other damages. Left unchecked, the City and its agents and contractors will continue to administer the IPMC in violation of the due process rights of Plaintiffs and other homeowners who are similarly situated.

## COUNT TWO
## VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS
### *(Due process and lack of probable cause)*

87.  Plaintiffs incorporate the preceding paragraphs.

88.  The Fourteenth Amendment to the U.S. Constitution guarantees that

life, liberty, and property will not be deprived without due process of law.

89.     The Fourth Amendment to the U.S. Constitution forbids malicious prosecution, including wrongful investigations, prosecutions, convictions, and incarceration.

90.     Christopher L. Garner is not and never has been the "owner" or "agent" of the Hills Property.

91.     Olivia Hemaratanatorn is not and never has been the "owner" or "agent" of the Sunningdale Property.

92.     The City lacked any probable cause to believe either Mr. Garner or Ms. Hemaratanatorn were the "owner" or "agent" of any property in the City.

93.     It is the custom and practice of the City of Inkster to use the threat of civil and criminal liability to otherwise law-abiding citizens to extort fines, fees, and other penalties.

94.     Specifically, prior to August 2015 they issued civil infraction violations to individuals who did not own property in the City of Inkster in violation of their own ordinance and constitutional protections.

95.     Specifically, after August 2015 they issued misdemeanor criminal violations to individuals who did not own property in the City of Inkster in violation of their own ordinance and constitutional protections.

96.     Numerous other non-owners of non-owner-occupied rental properties

have gone through similar experiences, and as a result have also been forced to pay fines to the City of Inkster despite a lack of reasonable suspicion to believe they had committed misdemeanor violations in the first place.

97.    Numerous other non-owners of non-owner-occupied rental properties have gone through similar experiences, and as a result have also been forced to pay to get themselves out of criminal liability despite there being a lack of probable cause to believe they had committed misdemeanor violations in the first place.

98.    Plaintiffs have a right to a good reputation and to engage in their chosen occupations and more generally a right to enjoy privileges long recognized as essential to the orderly pursuit of happiness by free men, including the right not to be prosecuted without probable cause to believe they have committed a crime.

99.    Defendants have had a long standing and firmly established procedure of prosecuting groundless civil and criminal actions against individuals who are non-owners of non-owner occupied housing. In other words, despite the plain language of their own ordinances, they charge everyone other than the "owner" that allegedly violates their code because such person is typically a corporate entity. Their unconstitutional action of pressing civil and criminal charges against the individuals who sign registration paperwork on behalf of a corporate entity as opposed to the actual offender is done for the sole purpose of hanging the threat of a criminal charge going on that individual's record (where the same threat carries

less weight over a corporate entity) over their head in order to extort fines and costs from them.

100.   Defendant's unconstitutional actions are further evidenced by their own ordinances. Section 150.235 specifically states that the purpose of the responsible local agent being named in the registration form is so the City has someone upon whom a violation order may lawfully be served. The purpose under their own ordinance is to provide an authorized person to accept service of a charge claiming a violation by the "owner" of the property, not to allow the City to charge such person with the criminal conduct of another.

101.   Even if the City's ordinances purported to stand for the proposition that an individual could be charged for the criminal conduct of another person such ordinance would be unconstitutional on its face.

102.   As set forth above, The City of Inkster has been successful in extracting hundreds of thousands of dollars from honest citizens such as Plaintiffs by subverting their own ordinances and the Constitutions of the State of Michigan and United States.

103.   As a direct and proximate result of these baseless prosecutions, Plaintiffs and numerous others have and will continue to suffer economic damages.

104.   Numerous criminal prosecutions have been initiated against Plaintiffs and the Defendants made, influenced, or participated in the decision to prosecute.

105.   There was no probable cause for any of the criminal prosecutions because Plaintiffs were not the owners of the non-owner occupied properties. Nor are Plaintiffs the property managers, or other party subject to the City's codes and ordinances.

106.   As a consequence of the legal proceedings, Plaintiffs have suffered deprivations of life, liberty, and property.

107.   The criminal proceedings brought against Plaintiffs have all been resolved in favor of the Plaintiffs, either by outright dismissal of the charges or through pleading the criminal charges down to civil infractions requiring the payment of a fine.

108.   To the extent any of these criminal proceedings were resolved by Plaintiffs in favor of Defendant, they were done so under the threat of deprivation of liberty and the threat of being labeled a convicted criminal by the court system and society as a whole.

109.   As a direct and proximate result of these baseless and malicious prosecutions, Plaintiffs and numerous others have and will continue to suffer economic damages.

## COUNT THREE
## VIOLATION OF FOURTEENTH AMENDMENT
### *(Deprivation of appellate rights)*

110.   Plaintiffs incorporate by reference the preceding paragraphs.

23

111.   The Michigan Constitution provides a right of appeal from a final order of an administrative body.

112.   The same right is mirrored in the IPMC in section 111.7 permitting court review of any ruling from an IPMC appeal.

113.   The City's conduct as set forth in this Complaint deprives Plaintiffs, and those similarly situated, of any right to appeal from the administrative body where the  City never conducts an appeal hearing and therefore never renders a final order of an administrative body to appeal from.

114.   See also section 111.8, which expressly stays any enforcement during the pendency of an appeal.

115.   This deprivation is especially important in the face of the strict liability civil and criminal charges the City levies against alleged wrongdoers under their ordinances and the IPMC.

116.   Plaintiffs have been harmed as a result of the City's unconstitutional conduct.

**COUNT FOUR**
**VIOLATION OF FOURTH AMENDMENT**
***(Warrantless Searches)***

117.   Plaintiffs incorporate by reference the preceding paragraphs.

118.   The Fourth Amendment to the U.S. Constitution prevents the government from conducting unreasonable searches and provides that warrants,

based on probable cause, are required before searching a house.

119.   As adopted by the City, Section 104.3 of the IPMC allows Code Officials to enter rental properties for the purpose of inspection or whenever the Code Officials believe the IPMC has been violated, all without any warrant or prior showing that reasonable cause exists for the entry.

120.   The adoption of the IPMC constitutes the City's express policy and practice of entering rental properties without first satisfying the dictates of the Fourth Amendment and thus, on its face, Section 104.3 is patently unconstitutional and should be struck in its entirety.

121.   Alternatively, the City has a policy and practice of punishing Plaintiffs and those similarly situated who fail to permit an inspection of their rental property for any reason. As applied, this practice violates the 4th Amendment of the U.S. Constitution.

122.   The City's policy and practice is that if an inspection is refused for any reason the owner of the property, or Plaintiffs in many cases, are threatened with criminal charges for such refusal.

123.   Under the guise of the City's unconstitutional inspection requirements the City has collected hundreds of thousands of dollars, or more, in registration and inspection fees.

124.   Plaintiffs have paid such registration and inspection fees under this

unconstitutional ordinance and have been harmed in doing so.

## COUNT FIVE
## INDIVIDUAL LIABILITY OF DEFENDANTS

125.    Plaintiffs incorporate the preceding paragraphs.

126.    It is unconstitutional to deprive of a person of property without due process of law. U.S. Constitution Article 5; Michigan Constitution 1963 Article 1, Section 17.

127.    Gina Triplett is an authorized officer by the City of Inkster to enforce the IPMC and the City's Code.

128.    Gina Triplett knows or should know the requirements of the IPMC and the City's Code. Accordingly, Gina Triplett knows or should know the procedural and due process requirements mandated by the IPMC and the City's Code.

129.    Jim Wright is an authorized agent of the City who enforces the IPMC and the City's Code. Jim Wright and McKenna Associates, Inc. are specifically those responsible for handling inspections, issuing notices, issuing reports, and handling appeals under the City's adopted IPMC.

130.    Jim Wright knows or should know the requirements of the IPMC and the City's Code. Accordingly, Jim Wright knows or should know the procedural and due process requirements mandated by the IPMC and the City's Code.

131.    Jim Wright's conduct as set forth in this Complaint is as an agent and

26

employee of McKenna Associates, Inc., who has liability to Plaintiff's accordingly.

132.   Defendant McKenna Associates, Inc. is the entity directly in charge of administering the City's ordinance inspections, registrations, notices, and appeals as alleged in this Complaint.

133.   Despite Gina Triplett's, McKenna Associates, Inc., and Jim Wright's knowledge of the IPMC and City's Code, these Defendants intentionally and deliberately take actions in direct contradiction of the IPMC and the City's Code.

134.   The IPMC, the City Code, and the procedural protections they afford to Plaintiffs, and those similarly situated, are clearly established.

135.   A reasonable person who is trained in the interpretation and enforcement of the IPMC and the City Code would know about the procedural due process requirements set forth therein.

136.   Gina Triplett's, McKenna Associates, Inc., and Jim Wright's conduct as set forth in this Complaint violated Plaintiff's clearly established constitutional due process rights.

137.   Gina Triplett's, McKenna Associates, Inc., and Jim Wright's conduct in violating Plaintiff's clearly established due process rights was unreasonable. Further, a reasonable person in their situation would have known that such conduct was in violation of the IPMC, the City Code, and Plaintiff's constitutional rights.

**COUNT SIX**
**ASSUMPSIT**

138.   Plaintiffs incorporate the preceding paragraphs.

139.   The City has been extracting fees and/or penalties from Plaintiffs and those similarly situated by way of denial of procedural due process rights.

140.   Pursuant to Section 106.3 of the IPMC, any action taken by the authority having jurisdiction on such premises shall be charged against the real estate upon which the structure is located and shall be a lien upon such real estate.

141.   Michigan law provides that an assumpsit action may be maintained against a municipality and/or its divisions without regard to government immunity when restitution is being sought for an illegal or inappropriate assessment that is authorized to become a lien on property.

## COUNT SEVEN
## MUNICIPAL LIABILITY

142.   Plaintiffs incorporate the preceding paragraphs.

143.   As set forth herein, the City and its Agents have administered the IPMC and City Code in ways which cause and result in depriving owners of rental real property in the City of their due process rights.

144.   More specifically, the City through their policies and customs, implemented and enforced by their Agents, has circumvented the requirements of due process by failing to notify property owners of their right to appeal an inspection deficiency notice under the IPMC and the City's Code.

145.   In this regard and as a routine part of their policies and customs, the City and their Agents deprived Plaintiff, and thousands of other homeowners in the City, of his right to a meaningful opportunity to be heard and their constitutional right to due process.

146.   The reason the City and their Agents fail in this respect is because they are driven by profit making rather than a legitimate governmental interest in preserving and protecting the safety and welfare of occupants of housing. The City's desired purpose is to set up homeowner's to fail so they can issue tickets that cannot be contested in court in order to generate funding to finance their cash-strapped municipality.

147.   As a direct result of and due to the driving force behind the City's and their Agent's refusal to provide constitutional due process, Plaintiffs and hundreds (or potentially thousands) like them have been forced to pay unlawful fines out of fear of continued levy and possible jail time. And given this manner and form of the City's and their Agent's administration of the IPMC, homeowners are deprived of their due process right to a meaningful opportunity to be heard.

148.   Also as set forth above, the City's conduct further deprives citizens of their right to be free from unreasonable searches and seizures under the 4th Amendment of the U.S. Constitution.

## COUNT EIGHT
## UNCONSTITUTIONAL CONDITIONS DOCTRINE

29

149.   Plaintiffs incorporate the preceding paragraphs.

150.   The City of Inkster uses its mandatory inspection and rental ordinance to coerce Plaintiffs, and those similarly situated, to give up their constitutional rights to be free from unreasonable searches and seizures.

151.   In the event Plaintiffs, or those others similarly situated, exercise their right to be free from a warrantless search they are deprived of their right to lawfully rent property in Inkster or they are punished by the issuance of civil and criminal penalties for such refusal.

152.   Inkster's conduct as set forth herein violates the Unconstitutional Conditions Doctrine and subjects Inkster to penalties for same.

**COUNT NINE**
**INJUNCTIVE RELIEF**

153.   Plaintiffs incorporate the preceding paragraphs.

154.   The City, through its Agents, continues to issue and enforce inspection orders in direct violation of the constitutional due process requirements of the IPMC and City Code.

155.   Plaintiffs, and those similarly situated, are still being denied their right to challenge the application of the code as set forth in the IPMC and the City's Code.

156.   Unchecked, the City, through its Agents, will continue to issue court

tickets to Plaintiffs and those similarly situated for failing to comply with the City's deficiency reports under the IPMC that are illegally issued and administered. As such, the City will continue to reap an illegal windfall for continuing to violate clearly established constitutional rights.

157.   Given these circumstance, the losses to Plaintiffs and other owners of real property in the City are imminent and as such Plaintiffs request injunctive relief and an order stopping the City and its Agents from its illegal and unconstitutional practices.

<u>**COUNT TEN**</u>
**DECLARATORY RELIEF**

158.   Plaintiffs incorporate the preceding paragraphs.

159.   An actual controversy exists between Plaintiffs and the City of Inkster and its Agents regarding their administration of the IPMC and City Code in violation of clearly established due process rights.

160.   Plaintiffs and others similarly situated are entitled to a declaration of their rights to due process in the context of the IPMC and City Code processes related to inspections, appeals, and obtaining certificates of occupancy, and ask that the Court determine that the City and their Agents must comply with the procedural due process requirements set forth in the IPMC and provide Plaintiff with a meaningful opportunity to be heard through an appropriate appeal notice, appeal hearing, and other due process requirements

31

## COUNT ELEVEN
### VIOLATION OF 42 USC 1983

161.   Plaintiffs incorporate the preceding paragraphs.

162.   Plaintiffs and the class of those similarly situated were given a right to procedural due process to challenge or otherwise appeal a determination of the City's code official before any enforcement or court action was taken.

163.   Despite these rights, Defendant's customs and policy eliminated Plaintiffs' (and similarly situated class Plaintiffs') rights without any due process or notice of any kind.

164.   As set forth above Defendants then proceeded to prosecute and collect fines and fees from Plaintiffs in violation of their due process rights.

165.   The City has deprived homeowners within its City of property and rights related thereto and are liable to the Plaintiffs and those similarly situated pursuant to 42 USC 1983.

166.   Pursuant to 42 USC 1988, in any action or proceeding to enforce Section 1983 the Court, in its discretion, may allow the prevailing party a reasonable attorney fee as part of the costs.

### VI.        STATE CAUSES OF ACTION

## COUNT TWELVE
### MALICIOUS PROSECUTION

167.     Plaintiffs incorporate the preceding paragraphs.

168.     Inkster and its Code Officials have instituted numerous proceedings against Plaintiffs and other property managers and non-owners.

169.     Many of those proceedings were terminated in favor of Plaintiffs and non-owners.

170.     There was an absence of probable cause for all of those proceedings as Inkster's own ordinance is limited to the Owner of the property and excludes any non-owner.

171.     The primary purpose for those proceedings was for malicious reasons other than those of genuinely bringing Plaintiffs and numerous others to justice.

172.     The primary purpose for naming non-owners in these civil and criminal violations is for Inkster to circumvent the United States and Michigan Constitutions and applicable due process.

173.     Plaintiffs and numerous others have suffered monetary and other damages as a direct result of Inkster's malicious prosecutions.

174.     Plaintiffs and numerous others are entitled to trebled statutory damages of any verdict pursuant to MCL 600.2907 and a statutory award of at least $200.00 per occurrence.

## COUNT THIRTEEN
## ABUSE OF PROCESS

175.     Plaintiffs incorporate the preceding paragraphs.

176.     Inkster has instituted numerous proceedings against Plaintiffs and

33

other non-owners of real property for ulterior purposes.

177.     Inkster's ordinances, and the United States and Michigan Constitutions prohibit attempting to hold another accountable for someone else's criminal conduct. Inkster's implementation and enforcement of their rental registration ordinances was found to be difficult to do in a just and lawful manner. Rather than abide by its own laws, the laws of the United States Constitution, and the laws of the State of Michigan Constitution, Inkster has a policy and practice of issuing civil and criminal violations to non-owners of property within its City in a blatant shortcut to compel compliance and otherwise extract fines.

178.     Inkster is willfully using the valid process of Michigan's 22nd District Court to obtain a result the law did not intend.

179.     Inkster has an ulterior motive for prosecuting non-owners of rental property because prosecuting the true owners would be too burdensome and often would not result in the collection of money the City so desperately wants to collect.

180.     Inkster's conduct as set forth is an abuse of process.

181.      Plaintiffs and numerous others have suffered monetary and other damages as a direct result of Inkster's abuse of process.

## COUNT FOURTEEN
## ASSUMPSIT/UNJUST ENRICHMENT/RESTITUTION

182.     Plaintiffs incorporate the preceding paragraphs.

183.     Inkster has been extracting fees and/or penalties from Plaintiffs and

34

those similarly situated by way of denying them procedural and substantive due process, just compensation, and of their rights under the Fourth and Fourteenth Amendments.

184.     Inkster has been illegally extracting such fees and/or penalties from Plaintiffs through the threat of criminal convictions and deprivation of liberty as set forth above.

185.     Michigan law provides that an assumpsit action may be maintained against a municipality and/or its divisions without regard to government immunity when restitution is being sought for an illegal or inappropriate exaction of money.

186.     Michigan law likewise provides that an action for restitution founded on principles of unjust enrichment may be maintained against a municipality and/or its divisions without regard to government immunity when compensation is sought for an illegal or inappropriate exaction.

187.     Plaintiffs and numerous others have suffered monetary and other damages as a direct result of Inkster and its Code Officials exacting illegal fees, fines, and penalties.

## COUNT FIFTEEN
### DEFAMATION PER SE

188.     Plaintiffs incorporate by reference the preceding paragraphs.

189.     Defendants made statements concerning the Plaintiffs, and numerous others, that they were criminals by charging Plaintiffs with the crimes referenced

above.

190.     Defendants' statements were published to the 22ndDistrict Court, which is a public body whose entire records are public to any person who wants to see them.

191.     Defendants were malicious in permitting Plaintiffs to be charged with such crimes and in permitting Plaintiffs to be labeled as criminal offenders. Defendants specifically used the threat of criminal charges and the loss of freedom as an end to their illegal and unconstitutional practices to extort money from Plaintiffs and those similarly situated.

192.     Defendants were at a minimum negligent in permitting Plaintiffs to be charged with such crimes and in permitting Plaintiffs to be labeled as criminal offenders.

193.     Labeling Plaintiffs as criminals and alleging that they have engaged in criminal conduct is defamation per se under both common law and codified Michigan law.

194.     Pursuant to MCL 600.2911 Plaintiffs are entitled to damages for Defendants' conduct including attorney's fees.

195.     Plaintiffs have been harmed by damages to their business reputations as a result of Defendants' conduct as set forth above.

## VII.   CLASS ALLEGATIONS

196.     Plaintiffs incorporate the preceding paragraphs.

197.     All Plaintiffs and putative class members have suffered and continue to suffer similar harm due to having their property taken by the City without minimum due process. After not receiving adequate notice or a meaningful opportunity to be heard, the Plaintiffs and class members are then faced with multiplying levies and/or possible jail time for failure to pay improperly issued fines.

198.     <u>Class Definition.</u> Plaintiff seeks to certify the following classes

   A) All persons and entities who currently own or at one time owned any parcel of real property located within the city of Inkster who has been issued civil infractions  or criminal violations for failing to obtain a certificate of occupancy, and subsequently paid fines, stemming from an inspection under the IPMC and the City Code, at any time since 2011 and through the date of final judgment, or such longer amount of time as may be allowed by law;

   B)  All persons who do not own real property in the City of Inkster who have been charged criminally instead of the owners of real property who have allegedly violated the City's codes and ordinances;

   C)  All persons and entities who have had their rental property inspected without probable cause let alone the issuance of a warrant, or who were otherwise coerced into allowing the inspections due to threats of or the actual imposition of fees, fines, or penalties, or jail; and

   D) All persons who paid any registration or inspection fee to the City of Inkster under the City's unconstitutional rental ordinances.

199.     <u>Numerosity.</u>  The proposed classes are so numerous that joinder of all

members is impracticable.  While the exact number of class members is not now

known, Plaintiffs believe the class number is in excess of 2,500 members. These

members may be readily identified from Defendant's own records.

200.    <u>Commonality.</u> There are questions of law or fact common to the

members of the class that predominate over questions affecting only individual

members.

201.    Among the questions of law or fact common to the class are the

following:

a)    Did the City provide proper notice of appeal as required by the IPMC?

b)    Did the City's failure to notify homeowners of their right to appeal

deprive Plaintiffs of a meaningful opportunity to be heard and the

minimum due process required by the IPMC, State of Michigan

Constitution, and United States Constitution?

c)    Does the City's ordinance facially permit unconstitutional warrantless

searches?

d)    Does the City's ordinance regarding rental inspections searches, as

applied, violate the 4th Amendment of the U.S. Constitution?

e)    Did the City routinely issue civil and criminal charges to individuals

who are not subject to the City's ordinances?

202.    <u>Typicality.</u>  The harm suffered by Plaintiffs is typical of the harm

suffered by other class members differing only in amount.  Accordingly, the claims of Plaintiffs are the same as those of the other class members.  Resolution of these common questions will determine the liability of the Defendants to Plaintiffs and the class members in general.  Thus, the claims properly form the basis for class treatment in this case.

203.     Although the amount of damages between individual class members may vary, the underlying liability issues remain the same as between all members of the class and all Defendants.

204.     <u>Adequacy of Representation.</u>  The represented parties will fairly and adequately assert and protect the interest of the class.  Plaintiffs have already demonstrated their willingness to pursue this litigation on their own behalf, and have no known conflicts with the class members.

205.     Plaintiff's co-counsel will also fairly and adequately represent the interest of the class.  Attorney Mark K. Wasvary is well versed in the facts and substantive law underlying the Plaintiff's claims and has previously been certified to represent a class in five other class actions lawsuits brought in this Court and against municipalities. Likewise, The Law Offices of Aaron D. Cox, PLLC is well versed in the facts and substantive law underlying the Plaintiff's claims having two attorneys with more than thirteen combined years of real estate and general litigation experience and who have litigated aspects of the IPMC and due process

39

before the State Courts of Michigan and the Federal District Court for the Eastern

District of Michigan and have also been certified to represent a class in two other

class action lawsuits brought in this Court and against municipalities.

206.     This class action is maintainable under Federal Rule of Civil

Procedure 23(b).

207.     The maintenance of this action as a class action will be superior to

other available methods of adjudication in promoting the convenient administration

of justice.

      a)    The prosecution of separate actions by or against individual members of the class could create a risk of inconsistent or varying adjudications with respect to individual members of the class that would confront the party opposing the class with incompatible standards of conduct; and/or

      b)    The prosecution of separate actions by or against individual members of the class would create a risk of adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

208.     The party opposing the class has acted or refuses to act on grounds

that apply generally to the class, so that final equitable, injunctive or corresponding declaratory and monetary relief is appropriate respecting the class as a whole. Specifically, Defendants have and continue to deprive homeowners of their right to appeal a notice of deficiency in violation of the due process rights of the class.

209.    The questions of law or fact common to class members predominate over any questions affecting only individual members, and as such a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

210.    The action is and will be manageable as a class action and in fact more manageable than the prosecution of separate actions in various forums and venues.

211.    In view of the complexity and importance of the constitutional issues and expense of the litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

212.    It is probable that the amount which may be recovered for individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action.

213.    Plaintiffs are not aware of any members of the proposed class that have filed similar litigation nor are Plaintiffs aware of any pending similar litigation in which the City is a Defendant.

214.    The class action is the appropriate method for the fair and efficient adjudication of the controversy.  The legal and factual bases for the Plaintiffs' claims are the same as for the claims of all class members.  The only difference between individual claims is the severity of the harm and resulting damages. Adjudicating this case on a class wide basis will promote substantial judicial economy by eliminating the likelihood of multiple cases (perhaps thousands) turning on the same questions of law and fact.  The class action will also provide the Plaintiffs with the only meaningful avenue for relief, due to the economy of spreading their litigation costs, thereby reducing each individual's expenses over the class and enabling counsel to pursue the litigation by aggregating the claims. Further, the class action will save the Defendants the burden of defending multiple suits in multiple forums.

## VIII.  RELIEF REQUESTED

WHEREFORE, on behalf of itself and others similarly situated, CHRISTOPHER L. GARNER and OLIVIA HEMARATANTORN requests the following relief:

A.    That this action be determined as proper to be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(b), together with an order appointing the named Plaintiffs to represent the class and subclass and certifying Plaintiffs' counsel to represent the class and subclasses;

B.      The injunctive and declaratory relief as applicable and specified above;

C.      An award of damages, including all applicable interest, in an amount to be determined at trial;

D.      An award of costs of this suit, including reasonable attorney's fees, as provided by 42 USC § 1988 or on other grounds;

E.      An award of an incentive fee to the named Plaintiffs for having the courage to come forward and challenge the City's rental codes and the manner in which it is administered;

F.      The expungement and/or other vacating and dismissal of any wrongfully obtained criminal conviction entered against Plaintiffs and or any class member; and/or

G.      Any other relief as necessary to redress the violation of Plaintiff's rights secured by the Constitution and laws.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all claims and issues so triable.

Respectfully submitted by:

THE LAW OFFICES OF AARON D. COX, PLLC
Co-Counsel for Plaintiffs
23380 Goddard Rd.
Taylor, MI 48180
734-287-3664

43

/s/ Aaron D. Cox, Esq.
By: Aaron D. Cox (P69346)
aaron@aaroncoxlaw.com

MARK K. WASVARY, P.C.
Co-Counsel for Plaintiffs
2401 W. Big Beaver Rd., Suite 100
Troy, MI 48084
(248) 649-5667

/s/ Mark K. Wasvary
By: Mark K. Wasvary (P51575)
mark@wasvarylaw.com