UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARNER PROPERTIES & MANAGEMENT
LLC, CHRISTOPHER L. GARNER; and
OLIVIA HEMARATANATORN,

                Plaintiffs,                Case No. 17-cv-13960

v.                                    Paul D. Borman
                                    United States District Judge

CITY OF INKSTER; GINA TRIPLETT;
MCKENNA ASSOCIATES, INC.; and
JIM WRIGHT,

                Defendants.
_____/

### OPINION AND ORDER
### (1) GRANTING IN PART AND DENYING IN PART
### DEFENDANT CITY OF INKSTER AND GINA TRIPLETT'S
### PARTIAL MOTION TO DISMISS (ECF NO. 20);
### (2) GRANTING DEFENDANTS MCKENNA ASSOCIATES, INC.
### AND JIM WRIGHT'S MOTION TO DISMISS COUNTS I AND II; and
### (3) GRANTING PLAINTIFFS LEAVE
### TO AMEND COUNT I OF THE COMPLAINT

Plaintiffs Garner Properties & Management, LLC ("GPM"), Christopher Garner

and Olivia Hemaratanatorn (collectively "Plaintiffs"), have filed this putative class

action against the City of Inkster, Gina Triplett, McKenna Associates, Inc.

("McKenna") and Jim Wright, for the alleged unconstitutional levy of penalties and

fines, and threats of imprisonment, for alleged violations of certain City of Inkster rental property codes and ordinances. The Defendants have filed motions to dismiss portions of the Plaintiffs' Complaint. (ECF Nos. 18, 20.) Plaintiffs have responded (ECF Nos. 23, 24) and Defendants have replied (ECF Nos. 28, 29). The Court held a hearing on June 15, 2018. For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART the City of Inkster and Triplett's motion to dismiss, GRANTS McKenna and Wright's motion to dismiss Counts I and II of Plaintiffs' Complaint, and GRANTS Plaintiff leave to amend Count I of the Complaint to correct a singular pleading error.

## I.     BACKGROUND

Plaintiffs bring this putative class action "on behalf of a class of persons who own residential real property in the City of Inkster (the "City" or "Inkster") and have been fined for failing [to] have a certificate of occupancy for a rental property." (Compl. ¶ 1.) Plaintiffs allege that under the Home Rule City Act (Mich. Comp. Laws §§ 117.1 *et seq.*) municipal entities like the City are empowered to adopt certain laws, codes, or rules for building maintenance control in their jurisdictions. Pursuant to this authority, the City has adopted the International Property Maintenance Code ("IPMC") through City Ordinance § 150.001, to regulate and govern "the conditions and maintenance of all property, buildings and structures[] by providing the standards

for supplied utilities and facilities and other physical things and conditions essential to ensure that structures are safe, sanitary and fit for occupation and use . . . ." (Compl. ¶ 6) (quoting Ordinance § 150.001.) The Ordinance provides "for the issuance of permits and collection of fees" and directs that a "Building Official shall be designated as the code official and shall be the official in charge of the enforcement" of the "City Code" that adopts and embodies the provisions of the IPMC. (*Id.*) The Code provides that "[a]ny person who shall violate a provision of this Code . . . shall be guilty of a misdemeanor and shall be liable for a fine of not less than $100 nor more than $500." (*Id.*) This "Code," i.e. the IPMC as adopted by the City of Inkster, "governs the regulation of maintaining existing residential real property within the City."[1]

Plaintiffs further allege that the City has enacted other ordinances that regulate the operation of rental housing within the City that require an owner of investment real estate who wants to rent property to register the property, obtain an inspection of the property, complete necessary repairs under the applicable code, and thereafter

---

[1] Plaintiffs also allege that the City has failed to identify the specific version of the IPMC that it adopted and that the City's adoption of IPMC as its governing Code "fails on its face." Beyond this single allegation in the Complaint, Plaintiffs make no effort to develop this argument further and the Court assumes for purposes of this motion that the City adopted the 2000 version of the IPMC because that is the version attached by Plaintiffs to their brief in response to the City of Inkster's motion to dismiss. (ECF No. 24, City of Inkster and Triplett's Resp. Ex. A, 2000 IPMC.)

obtain a certificate of compliance. (Compl. ¶ 9.) Inspections under these ordinances are performed by a "Code Official" who has been trained in these codes and ordinances and "should know the requirements of the IPMC and other applicable codes." (Compl. ¶ 10.) The City's inspection under these ordinances is governed by the City's adoption of the IPMC, and inspection requires compliance with the IPMC such that an owner of rental property cannot obtain a certificate of compliance from the City until he or she passes an inspection pursuant to the IPMC. (Compl. ¶ 11.)

The Complaint alleges that the IPMC contains its own set of procedural guidelines that the City must comply with, such as the provision that a prosecution for violations for a failure to comport with an inspection performed under the IPMC cannot be initiated until a person has failed to comply with a notice of violation served in accordance with Section 107 of the IPMC. (Compl. ¶ 12.) Section 106 provides in pertinent part as follows:

> **106.1 Unlawful Acts.** It shall be unlawful for a person, firm or corporation to be in conflict with or in violation of any of the provisions of this code.

> **106.2 Notice of Violation.** The code official shall serve a notice of violation or order in accordance with Section 107.

> **106.3 Prosecution of violation.** Any person failing to comply with a notice of violation or order served in accordance with Section 107 shall be guilty of a misdemeanor, and the violation shall be deemed a strict liability offense. If the notice of violation is not complied with, the code

official shall institute the appropriate proceeding at law or in equity to restrain, correct, or abate such violation . . . .

**106.4 Violation penalties.** Any person who shall violate a provision of this code, or fail to comply therewith, or with any of the requirements thereof, shall be prosecuted within the limits provided by state or local laws. Each day that a violation continues after due notice has been served shall be deemed a separate offense.

(IPMC Section 106 Violations.)

Section 107 of the IPMC, in turn, provides the following with respect to the

content and form for a notice of violation:

**107.1 Notice to owner or to person or persons responsible.** Whenever the code official determines that there has been a violation of this code or has grounds to believe that a violation has occurred, notice shall be given to the owner or the person or persons responsible therefore in the manner prescribed in Section 107.2 and 107.3.

**107.2 Form.** Such notice prescribed in Section 107.1 shall be in accordance with all of the following:

1. Be in writing.
2. Include a description of the real estate sufficient for identification.
3. Include a statement of the violation or violations and why the notice is being issued.
4. Include a correction order allowing a reasonable time to make repairs and improvements required to bring the dwelling unit or structure into compliance with the provisions of this code.
5. Inform the property owner of the right to appeal.
6. Include a statement of the right to file a lien in accordance with section 106.3.

**107.3 Method of service.** Such notice shall be deemed to be properly served if a copy thereof is:

1. Delivered personally;
2. Sent by certified or first-class mail addressed to the last known address; or
3. If the notice is returned showing that the letter was not delivered, a copy thereof shall be posted in a conspicuous place in or about the structure affected by such notice.

(Compl. ¶¶ 10-14, ECF No. 24, Pls.' City Resp. Ex. A.)

The IPMC provides for a process of appeal in Section 111, which provides in pertinent part:

**111.1 Application for appeal.** Any person directly affected by a decision of the code official or a notice or order issued under this code shall have the right to appeal to the board of appeals, provided that a written application for appeal is filed within 20 days after the day of the decision. An application for appeal shall be based on a claim that the true intent of this code or the rules legally adopted thereunder have been incorrectly interpreted, the provisions of the code do not fully apply, or the requirements of this code are adequately satisfied by other means, or that the strict application of any requirement of this code would cause an undue hardship.

**111.2 Membership of board.** The board of appeals shall consist of a minimum of three members who are qualified by experience and training to pass on matters pertaining to property maintenance and who are not employees of the jurisdiction. The code official shall be an ex-officio member but shall have no vote on any matter before the board. . . .

\*          \*          \*

**111.7 Court review.** Any person, whether or not a previous party of the appeal, shall have the right to apply to the appropriate court for a writ of

certiorari to correct errors of law. Application for review shall be made in the manner and time required by law following the filing of the decision in the office of the chief administrative officer.

**111.8 Stays of enforcement.** Appeals of notice and orders (other than Imminent Danger notices) shall stay the enforcement of the notice and order until the appeal is heard by the appeals board.

(Compl. ¶¶ 18-19; Pls.' City Resp. Ex. A.)

Plaintiffs allege that despite these procedural guidelines required by the IPMC, the City refuses to comply with them and instead issues civil infraction fines and misdemeanor violations to the owners for failure to bring properties in compliance with the IPMC by issuing tickets for failing to obtain a certificate of occupancy under the City's local ordinances, without regard to the Notice requirements of the IPMC. (Compl. ¶¶ 19-20.) The City begins this process by issuing a property inspection report ("PIR") that requests that the owner correct any listed failure to comply with the IPMC and associated codes. If the items contained in the PIR are not complied with the City issues a "Violation" that references the City ordinances related to certificates of compliance. At no point in either the PIR or the Violation does the City provide a correction order allowing a reasonable time to make repairs and improvements to bring a dwelling into compliance with the IPMC. (Compl. ¶¶ 21-24.)

According to the allegations of the Complaint, at no point in either the PIR or the Violation process does the City notify the property owner of the right to appeal under the IPMC. The required notices explaining the right to appeal under the provisions of the IPMC are not provided to hundreds, if not thousands, of homeowners in the City who register their properties and attempt to comply with the IPMC. The City issues hundreds, if not thousands, of civil infraction and misdemeanor violations to landowners and non-owners alike without informing them of their right to appeal. According to the allegations of the Complaint, these homeowners and non-owners are threatened with liens, demolition, daily fines, and even criminal liability in order to extort fines and fees to fund the City's "cash-strapped municipality." Unaware of their right to appeal, these homeowners and non-owners are forced to succumb to the power of the City and City Officials and pay countless fines and/or perform unnecessary repairs. (Compl. ¶¶ 25-29.) Failing to inform the property owners of their right to appeal the code officials' determinations under the IPMC has removed any possibility for raising a challenge by the homeowner to the code official's determination or interpretation of the IPMC. The only option for the homeowner is going to court after the violation has issued and the fine or penalty imposed, at which point the homeowner can no longer contest the code officials' determination because the IPMC deems the failure to obtain a certificate of occupancy

as a strict liability offense.  (Compl. ¶¶ 31-33.)

Specifically with regard to these Plaintiffs, they allege that GPM manages a property at 28253 Rosewood, Inkster, MI ("the Rosewood Property").  On January 5, 2015, the City issued a Violation to GPM alleging the Rosewood Property did not have a certificate of occupancy and that the Rosewood Property was rented without a certificate of occupancy.  The Violation failed to notify the alleged wrongdoer of their right to appeal. The Violation did not provide the alleged wrongdoer with a reasonable time frame in which to complete repairs.  The City issued a PIR on January 20, 2015.  The PIR failed to notify GPM and/or the owner of the Rosewood Property of their right to appeal the code official's determinations of alleged defects as required by the IPMC.  On January 29, 2015, Plaintiffs issued a letter requesting an appeal of the code official's determination as permitted under the IPMC, but a ticket had already been issued by Defendant code official Gina Triplett to Plaintiff Christopher Garner personally.   On February 5, 2015, in response to Plaintiffs' request to appeal, Defendant Jim Wright of Defendant McKenna Associates acknowledged receipt of the appeal request and then provided code cites to support the position taken rather than acknowledge the right to appeal the determination.  No stay was entered as required under the IPMC and Christopher Garner appeared in court on February 10, 2015, as compelled and contested his liability but was ordered to pay a $250.00 fine

for failing to provide a certificate of occupancy for the Rosewood Property. Failure to pay the $250.00 would result in a contempt order or a bench warrant being issued for his arrest. Facing the loss of his personal freedom, Mr. Garner paid the fine. (Compl. ¶¶ 39-51.)

In August, 2015, the City adopted modifications to the city ordinances making what used to be civil infractions into misdemeanor violations. On or about March 13, 2017, the City issued a misdemeanor criminal violation to Christopher Garner related to a property managed by GPM at 26391 W. Hills Drive, Inkster, MI (the "Hills Property"). The ticket to Mr. Garner was issued without probable cause where Section 155.297 of the City's codes sets any zoning violation as applying to the Owner of the property. The city's code section 150.231 defines "owner" as "any person, agent, firm or corporation having a legal or equitable interest in the premises." The Hills Property is owned by Great Lakes Affordable Housing, LLC ("Great Lakes"). GPM is the "applicant" and agent of Great Lakes. Christopher Garner signed the application as the managing member of GPM and has no personal obligation to the Hills Property or to the City. The notice of alleged violation was sent to GPM and was not sent to Christopher Garner, despite the City's clear knowledge that the owner of the Hills Property was Great Lakes and the agent was GPM, not Christopher Garner. Despite this knowledge, the City issued a criminal violation to

Mr. Garner personally. Mr. Garner was required to come to court and be arraigned, under the penalty of imprisonment and fines. Mr. Garner was forced to retain counsel and defend himself over these allegations, which were ultimately dismissed. (Compl. ¶¶ 53-62.) These same events occurred to Plaintiff Olivia Hemaratanatorn, who is the managing member of Comich, LLC. Comich LLC owns property in the City that is registered as rental property at 420 Sunningdale, Inkster, MI (the "Sunningdale Property"). Despite the City's knowledge that Comich LLC managed the Sunningdale Property, the City issued a criminal violation to Ms. Hemaratanatorn, subjecting her to threats of criminal liability. (Compl. ¶¶ 63-65.)

Finally, Plaintiffs allege that the inspection provisions of the IPMC, both facially and as applied by the City, violate the Fourth Amendment guarantee against unreasonable searches because the code allegedly permits the City to conduct random searches for code violations, which carry criminal penalties, without a warrant and without reasonable suspicion. (Compl. ¶¶ 117-124.) The relevant provisions of the IPMC relating to inspections provide as follows:

> **104.3 Inspections.** The code official shall make all of the required inspections, or shall accept reports of inspection by approved agencies or individuals. All reports of such inspections shall be in writing and be certified by a responsible officer of such approved agency or by the responsible individual. The code official is authorized to engage such expert opinion as deemed necessary to report upon unusual technical issues that arise, subject to the approval of the appointing authority.

**104.4 Right of entry.**  The code official is authorized to enter the structure or premises at reasonable times to inspect subject to constitutional restrictions on unreasonable searches and seizures.  If entry is refused or not obtained, the code official is authorized to pursue recourse as provided by law.

*          *          *

**104.6 Notices and orders.**  The code official shall issue all necessary notices or orders to ensure compliance with this code.

(Pls.' City Resp. Ex. A.)

Plaintiffs' allegations essentially group into three separate claims: (1) deprivation of due process by property owners for failure to notify them of their right to appeal and failure to maintain a board of appeals to hear appeals from code violations and to enforce the stay provision of the IPMC; (2) deprivation of due process, and Fourth Amendment violation for lack of probable cause, by individual members of certain property management business entities (LLCs and corporations) who are not property owners and are being personally charged with criminal violations when the City (and Triplett individually) have knowledge that these individuals are simply "members" or "employees" of a property management company and are not the legally responsible entity; and (3) unconstitutionality, both facial and as applied, of provisions of the Inkster City Code that permit home inspections without a warrant or reasonable suspicion for the purpose of detecting

code violations.

Specifically, Count One alleges a violation of the due process rights of homeowners based upon the lack of notice to them of their right to appeal determinations of a code official under the IPMC. Count Two alleges "due process" violations and "lack of probable cause" to institute criminal proceedings against non-owners of rental properties. Count Three alleges a violation of due process rights of both owners and non-owners of real property due to the City's failure to create a board of appeals as required under the IPMC to challenge the strict liability determinations and failure to institute the stay of enforcement required under the IPMC in the instance of an appeal. Count Four challenges the provisions of the IPMC (Section 104.3) pursuant to which the City allegedly conducts warrantless searches of rental properties without reasonable cause as unconstitutional under the Fourth Amendment, both facially and as applied. Count Five, captioned "Individual Liability of Defendants," sets forth allegations specific to the individual Defendants, Triplett and Wright, and their personal involvement in the unconstitutional conduct alleged in the Complaint. Count Six (Assumpsit) has been voluntarily dismissed by the Plaintiffs. Count Seven, captioned "Municipal Liability," sets forth allegations on behalf of homeowners specific to the alleged policy and customs of the City in carrying out the unconstitutional acts alleged in the Complaint. Count Eight, captioned

"Unconstitutional Conditions Doctrine,"alleges that the City uses its mandatory inspection and rental ordinances to force homeowners to relinquish their constitutional rights to be free from unreasonable searches and seizures and to force non-owners to relinquish their right to rent property in the City or face civil and criminal penalties. Counts Nine and Ten seek injunctive and declaratory relief, respectively, with respect to the conduct alleged in the Complaint. Count Eleven, captioned "Violation of 42 U.S.C. § 1983," reasserts a claim for deprivation of due process under that statute and seeks attorneys fees. Counts Twelve through Fifteen allege the following state law claims, respectively: Malicious Prosecution (by non-owners/property managers as to whom City lacked probable cause to issue violations), Abuse of Process (same factual basis as Malicious Prosecution), Assumpsit/Unjust Enrichment/Restitution (for illegal extraction of fines and fees), and Defamation Per Se (for allegedly defamatory statements made in connection with charging Plaintiffs with criminal conduct).

Defendant Triplett now moves, under Fed. R. Civ. P. 12(b)(6), to dismiss all claims against her on the basis of qualified immunity and the City moves for partial dismissal, also pursuant to Fed. R. Civ. P. 12(b)(6), of Count I (Violation of Due Process), Count VI (Assumpsit), and all state law claims, i.e. Counts XII (Malicious Prosecution), XIII (Abuse of Process), XIV (Assumpsit/Unjust Enrichment/Restitution), and XV (Defamation Per Se). (ECF No. 20, City and

Triplett's Mot. 7.)  Defendants McKenna and Wright move separately, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Counts I and II of Plaintiffs' Complaint.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012).  Sixth Circuit "precedent instructs that, for a complaint to survive such motions, it must contain 'either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'" *Buck v. City of Highland Park, Michigan*, __F. App'x__, 2018 WL 2059525, at *2 (6th Cir. May 2, 2018) (quoting *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir.  2013)).  "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted). In other

words, a plaintiff must provide more than "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has recently reiterated that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.  ANALYSIS

### A.  Defendant City of Inkster and Gina Triplett's Motion to Dismiss

#### 1.  Triplett is entitled to qualified immunity as to portions of the constitutional claims asserted against her.

Triplett argues that all of the constitutional claims alleged against her should be dismissed on the basis of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Qualified immunity requires the court to determine: (1) "whether the

facts that a plaintiff has alleged . . . make out a violation of a constitutional right" and (2) "whether the right at issue was "clearly established" at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (citations omitted). "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Id*. Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236. "Each Defendant's liability must be assessed individually based on his [or her] own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010).

The Sixth Circuit has adopted the following well-established analysis for determining whether a right is clearly established:

> For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (quoting *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151). "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Ashcroft v. al-Kidd*, —— U.S. ——, 131 S.Ct. 2074, 2084, 179 L.Ed.2d 1149 (2011) (citing *Saucier*, 533 U.S. at 201–02, 121 S.Ct. 2151). Thus, "[t]he relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he

confronted." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151 (citing *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).

"We look first to the decisions of the Supreme Court, and then to the case law of this circuit in determining whether the right claimed was clearly established when the action complained of occurred." *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002) (citing *Black v. Parke*, 4 F.3d 442, 445 (6th Cir. 1993)). "[T]he case law must 'dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.' " *Id.* (quoting *Saylor v. Bd. of Educ. of Harlan Cnty.*, 118 F.3d 507, 515 (6th Cir. 1997)). Plaintiffs bear the burden of showing the claimed right was clearly established. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009).

*Clemente v. Vaslo*, 679 F.3d 482, 490 (6th Cir. 2012). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Flying Dog Brewery, LLP v. Michigan Liquor Control Comm'n*, 597 F. App'x 342, 353 (6th Cir. March 5, 2015) (internal quotation marks and citation omitted). The inquiry requires the Plaintiff to point to "controlling authority" or "a robust consensus of cases of persuasive authority" to demonstrate that the right was clearly established. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (internal quotation marks and citation omitted). *See Hidden Village, LLC v. City of Lakewood, Ohio*, 734 F.3d 519, 529 (6th Cir. 2013) (Observing that the clearly established inquiry requires the plaintiff to point to "controlling authority" or "a robust consensus of cases of persuasive authority" in order to show that the right

was clearly established.) (quoting *al-Kidd*, 563 U.S. at 742).

"[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). "Although an officer's entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Id*. at 433-34 (internal quotation marks and citation omitted) (alteration in original). However, once a defendant raises the qualified immunity defense, "plaintiff bears the burden of showing that defendants are not entitled to qualified immunity." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). "Plaintiff is thus obliged to plead *facts* that, viewed in the light most favorable to him, make out a violation of a constitutional right so clearly established in a particularized sense that a reasonable offic[ial] confronted with the same situation would have known that his conduct violated that right." *Id*. (quoting *al-Kidd*, 131 S. Ct. at 2083-84) (emphasis in original). "Moreover, the allegations must demonstrate that each defendant [official], through his or her own individual actions, *personally* violated plaintiff's rights under clearly established law." *Id*. (emphasis in original).

Triplett concedes, for purposes of her Motion only, that "Triplett was, at all times relevant, acting under the color of law when she issued the tickets and notice of

violations at issue." (Defs.' City and Triplett's Mot. 12.) Triplett seemingly interprets Plaintiffs' Complaint as alleging only a due process Fourteenth Amendment claim against her, in her individual capacity as an officer of the City authorized to enforce the IPMC and City Code, based on her involvement in issuing Notices of Violations and subsequent citations to Plaintiffs and similarly situated individuals. (Defs.' Mot. 12 n. 1.) The essence of Plaintiff's due process claim against Triplett is that she issued Notices of Violation to non-owner responsible parties, which threaten legal action and state that a failure to comply and correct the alleged violation(s) will result in an order to appear in court, that do not contain the information required by the IPMC, in particular that do not contain a notification of the alleged violator's right to appeal the finding of a violation.

The Complaint attaches a Notice of Violation, dated January 5, 2015, directed to "Garner Properties" regarding alleged failures to obtain a certificate of occupancy and a certificate of compliance for the Rosewood Property, and signed by Triplett in her position as "Code Enforcement Officer." (Compl. ¶ 40, Ex. A.) The Notice of Violation states that the "violations must be eliminated prior to January 15, 2015," in order to avoid the imposition of liens and to avoid legal action and an appearance before the 22nd District Court. (*Id*.) The Notice of Violation does not contain any reference to a right to appeal and allowed only 10 days from date of issuance to make

the repairs. (Compl. ¶ 41, Ex. A.) On January 20, 2015, the City issued a Property Inspection Report, detailing the results of an inspection of the Rosewood Property and requiring certain repairs to be completed, again containing no notice of the alleged violator's right to appeal. (Compl. ¶¶ 43-45, Ex. B.) On January 29, 2015, Christopher Garner/GPM sent a notice to the Building Department in the City of Inkster stating an intent to appeal the results of the inspection at the Rosewood Property under the provisions of the IPMC. (Compl. ¶ 46, Ex. C.) Unbeknownst to Garner and GPM, Triplett had already issued an Ordinance Violation Ticket, dated January 26, 2015, charging "Christopher Garner/Garner Properties" with violations of the City ordinances for failure to obtain a valid certificate of occupancy and certificate of compliance. (Compl. ¶ 47, Ex. C.) The Violation Ticket is signed by Triplett in her capacity as "Ordinance Officer." (Compl. Ex. C.) Plaintiff alleges that on February 5, 2015, Defendant Wright of McKenna acknowledged receipt of Plaintiffs' appeal request as to the Rosewood inspection and, rather than complying with the IPMC which would have required a stay of enforcement, Wright simply provided citations to code sections supporting the City's decision. (Compl. ¶ 48.) Plaintiff was compelled to appear in court on February 10, 2015, contested his liability and was found strictly liable *personally* for not obtaining a certificate of occupancy for the Rosewood Property and ordered to pay a fine of $250. (Compl. ¶ 50.)

The Complaint further alleges that on March 13, 2017, the City of Inkster issued a misdemeanor criminal violation to Christopher L. Garner related to a property located at 26391 West Hills Drive, Inkster ("the Hills Property"). (Compl. ¶ 54, Ex. F.) The Violation Ticket cites the failure to obtain a certificate of compliance and certificate of occupancy for the Hills Property and is signed by Defendant Triplett in her capacity as Ordinance Officer. (Compl. Ex. F.) The Hills Property is owned by Great Lakes Affordable Housing, LLC ("Great Lakes") as evidenced by the Rental Registration filed by GPM as the applicant and agent of Great Lakes. (Compl. ¶ 56, Ex. G, Rental Property Registration Form.) Christopher Garner signed the application for the Hills Property as the managing member of GPM and not as an individual. (Compl. ¶ 58.) Under the applicable City ordinance, Section 155.297, only an "owner" of property can be held liable for a zoning violation and "owner" is defined as one holding legal or equitable interest in the Property. Great Lakes, and not Christopher Garner or GPM, is the owner of the Hills Property. Thus, alleges Plaintiff, when Triplett issued the misdemeanor ticket to Christopher Garner she did so without probable cause to believe he was the "owner" of the Hills Property. (Compl. ¶¶ 56-58.) Mr. Garner was required to appear in court on the misdemeanor violation, was arraigned under penalty of imprisonment and fines, and forced to retain counsel to defend himself. Ultimately the allegations against him were dismissed.

(Compl. ¶ 62.)

Plaintiffs claim that Triplett, in signing these Notices of Violation and issuing these civil and criminal violations, with knowledge that they did not contain the information required by the IPMC regarding the alleged violator's right to appeal and knowing that they were not directed to the legally responsible party, violated Plaintiffs' due process and Fourth Amendment rights. "Although conditions of a person's mind may be alleged generally, the plaintiff must still plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation plausible on its face." *Mills v. Barnard*, 869 F.3d 473, 489 (6th Cir. 2017) (internal quotation marks and citations omitted). Plaintiffs must sufficiently plead Triplett's knowledge of the notice requirements of the IPMC and her knowledge that the rental properties at issue in the Complaint were not owned by Christopher Garner or GPM and were not managed by Christopher Garner, the individual charged with a misdemeanor violation, such that it is plausible to infer that she understood that issuing the Notices of Violation and subsequent tickets would violate Plaintiffs' constitutional rights. As Triplett states in her motion: "[T]he relevant inquiry is whether Defendant Triplett would have understood that issuing the notice of violations and subsequent tickets would violate Plaintiffs' constitutional due process rights." (Triplett's Mot. 14.)

Triplett argues only the clearly established prong of the qualified immunity analysis in her motion, asserting that "the law was not clearly established that the notice of violation she provided and the tickets she issued were constitutionally inadequate."[2]  (Triplett's Mot. 16.)  Triplett relies on *Gardner v. Evans*, 811 F.3d 843 (6th Cir. 2016), in which the Sixth Circuit considered the constitutionality of "red tag" eviction notices issued by various code compliance officers ("inspectors") who inspected buildings and issued notices of eviction for alleged violations of the Lansing Housing and Premises Code.  *Id*. at 845.  Each of the red tag notices informed the tenant that he or she was not permitted to reside in the residence until corrections were made as noted to bring the residence in compliance with the housing code.  *Id*.  None

---

[2]  With respect to the first prong of the qualified immunity analysis, whether the official's conduct violates a constitutional right, other courts in this District have concluded that substantially similar rental codes and ordinance practices do present issues of a constitutional magnitude and have advanced cases alleging substantially similar facts past the summary judgment stage.  *See, e.g. NILI 2011, LLC v. City of Warren*, No. 15-cv-13392, 2017 WL 5467746 (E.D. Mich. Nov. 14, 2017) (finding genuine issues of material fact as to whether certain of the city's rental code provisions deprived plaintiffs of procedural due process and/or violated plaintiffs' Fourth Amendment rights); *Garner Properties & Mgt. v. Charter Twp. of Redford*, No. 15-14100, 2017 WL 3412080 (E.D. Mich. Aug. 8, 2017) (finding genuine issues of material fact regarding whether the City of Redford's rental property inspection scheme, which allowed routine inspections for code violations without a warrant or probable cause, and which imposed immediate penalties, both civil and criminal, for a refusal to consent to a search, violated the Fourth Amendment).  Because the City of Inkster and Triplett focus their argument on the clearly established prong, the Court need not address the constitutional violation prong of the qualified immunity analysis at this time.

of the red tag notices issued by the inspectors provided any information about an occupant's right to appeal the inspector's decision and receive an administrative hearing. *Id*. The Sixth Circuit observed:

> The red-tag notices failed to reveal that § 1460.12 of the Lansing Housing and Premises Code outlines a post-deprivation appeals process and directs that if an evicted occupant fails to file an appeal within twenty days after receiving a red-tag, the occupant waives the right to administrative review. Unaware of these requirements, none of the Tenants filed an appeal within the twenty-day period, and thus all of them inadvertently waived their right to an administrative review.

811 F.3d at 846. The tenants filed suit arguing that the inspectors "violated their due process rights by failing to provide constitutionally sufficient notice of their ability to appeal the red-tag eviction." *Id*. The Sixth Circuit assumed, without deciding, that the red-tag notices were "constitutionally infirm" but found that the tenants' arguments failed to satisfy the clearly established prong of the qualified immunity analysis. The court determined that while Sixth Circuit precedent established that a tenant was entitled to the same notice of eviction as a landlord receives, that precedent, *J.C. Flatford v. City of Monroe*, 17 F.3d 162 (6th Cir. 1994), did "not clearly establish the particularity or specificity required for such notice." 811 F.3d at 847. Finding a "general lack of clarity regarding the notice requirement for a post-deprivation appeals process," the Sixth Circuit held that "*Flatford* did not clearly establish that a notice of eviction must include a specific reference to the availability

of any post-deprivation appeals process and the manner in [which] such an appeal may be pursued." The Sixth Circuit concluded that the "case law is not so clear on this point as to render the Inspector's actions unreasonable." *Id*. at 848.

Plaintiffs distinguish *Gardner* on the basis that in this case, Section 107 of the IPMC, with which Triplett is alleged to be familiar, *requires* that the Notice of Violation inform the alleged violator of the right to appeal. In *Gardner*, although the Sixth Circuit noted that there was a section of the Lansing Housing and Premises Code that outlined a post-deprivation appeals process and directed that if an evicted occupant fails to file an appeal within twenty days after receiving a red-tag, the occupant waives the right to administrative review, there was no suggestion in that case that there was a code section or ordinance, like Section 107 of the IPMC, that expressly directed that the red tag notices must contain information regarding the right to appeal. Here, argue Plaintiffs, Triplett cannot claim to have been unaware that the right to appeal should have been expressed in the Notices of Violation she personally issued because the very Code that governed her conduct required that such information be contained in such a Notice. Here, Plaintiffs argue, the clarity found lacking in *Gardner* is present by virtue of the command of Section 107 that the Notice contain information explaining the alleged violator's right to appeal. However Plaintiffs "bear[] the burden of showing that defendants are not entitled to qualified

immunity," and must "plead facts that, viewed in the light most favorable to him, make out a violation of a constitutional right so clearly established in a particularized sense that a reasonable offic[ial] confronted with the same situation would have known that his conduct violated that right." *Moseley*, 790 F.3d at 653. Plaintiffs do not point to a body of clearly established law, or even "a robust consensus of cases," to support the proposition that a reasonable official in Triplett's position would understand that failing to issue a Notice of Violation that strictly complies with the notice requirements of the IPMC would violate the due process rights of the party being charged. *See, e.g., Shoemaker v. City of Howell*, 795 F.3d 553, 560 (6th Cir. 2015) ("Although the City failed to fully comply with its own Ordinance, such a failure 'does not . . . automatically translate into a deprivation of procedural due process under the United States Constitution.'") (quoting *DePiero v. City of Macedonia*, 180 F.3d 770, 788 (6th Cir. 1999)). In other words if it was not clearly established exactly what the content of such notice should include, or even whether a pre- or post- deprivation proceeding was required, it could not be clearly established that the City's Notices must include information regarding a right to appeal. For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate." *Plumhoff v. Rickard*, __U.S.__, 134 S. Ct. 2012, 2023 (2014) (internal quotation marks and

citation omitted).  Plaintiffs offer no precedent, or even a "robust consensus" of law, on this specific constitutional challenge.[3]  Accordingly, as to Plaintiffs' claim that Triplett violated Plaintiffs' constitutional rights by issuing Notices of Violation that failed to include information regarding a right to appeal, Plaintiffs have failed to carry their burden of demonstrating that the law was clear, i.e. that there was at least a "robust consensus" of case law, in 2015 that a reasonable official in Triplett's position would have known that the City's Notices were constitutionally deficient due to the lack of information regarding a right to appeal.  Accordingly, Triplett is entitled to qualified immunity as to the claims pleaded in the Plaintiffs' Complaint against her individually regarding her issuance of Notices of Violation that did not contain the appeal rights specified in the IPMC.

However, Plaintiffs also argue that Triplett is not entitled to qualified immunity on their claim that she violated their constitutional rights by issuing Violation tickets

---

[3]  The law *was* clearly established in 2015 and long before, that a property owner cannot be forced to consent to a warrantless routine administrative search. *See, e.g., Camara v. Mun. of San Francisco*, 387 U.S. 523, 540 (1967).  In this warrantless search context, the Sixth Circuit has held that an "Ordinance does not violate the Fourth Amendment [if] it expressly provides that if entry is refused, an inspection may only be conducted as provided by law, and that the Ordinance shall not be construed to require an owner to consent to a warrantless inspection." *Harris v. Akron Dept. of Public Health*, 10 F. App'x 316, 319 (6th Cir. 2001). Plaintiffs' Complaint here, however, contains no allegations that plausibly suggest that Triplett personally participated in a warrantless entry without consent onto any person's property.

to Christopher Garner personally and subjecting him personally to misdemeanor penalties when Triplett was aware that GPM, the business entity, and not Christopher Garner personally, was the legally responsible entity. Plaintiffs argue that any reasonable building code official in Triplett's position would understand that instituting criminal (or civil) charges against an individual that the official *knew* was not legally responsible for the violation charged would violate that individual's due process rights and Fourth Amendment right to be free from prosecution without probable cause. As United States District Judge Marianne O. Battani of this District observed in granting a preliminary injunction to Christopher Garner on substantially similar allegations as to the City of Eastpointe's practices: "[I]f, in fact, as plaintiff argues they . . . cannot be individually charged . . . [and] are being criminally charged inappropriately on a regular basis . . . there is a due-process violation there; people have the right not to be criminally charged without a proper basis." (*Garner v. City of Eastpointe*, No. 16-12305 (E.D. Mich. 2016) (ECF No. 29, Transcript of June 1, 2017 Preliminary Injunction Hearing 42:22-43:4.) The right to be prosecuted only upon probable cause was clearly established long before Triplett issued the Violations under scrutiny here charging Plaintiffs, whom she allegedly knew she lacked probable cause to charge, with misdemeanors for alleged Code violations. *See, e.g. Miller v. Maddox*, 866 F.3d 386, 396 (6th Cir. 2017) (noting that it was clearly established in

this Circuit at least as early as 1999 that "fabricating probable cause, thereby effectuating a seizure, would violate a suspect's clearly established Fourth Amendment right to be free from unreasonable seizures") (internal quotation marks and citation omitted).

Here, Plaintiffs allege, and offer the violations signed by Triplett as supporting evidence, that Triplett wrote misdemeanor tickets under penalty of perjury to individuals whom she knew were not owners of the property or the appropriate "legally responsible person," and whom she knew she did not have probable cause to charge.[4] While discovery may establish facts that contradict these allegations, the Court must accept them as true for purposes of resolving Triplett's motion under Rule 12(b)(6). "[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley*, 779 F.3d at 433. "Although an officer's entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal

---

[4] In Reply, Triplett argues that "Plaintiffs' assertions to the contrary," Inkster Ordinance § 39.01 permitted Triplett to issue citations to "any responsible person," and that it was not unreasonable for her to assume that Christopher Garner was such a person. (ECF No. 29, Triplett's Reply 5.) However, the Court cannot put "Plaintiffs' [well pleaded] assertions aside" at this stage of the proceedings. Plaintiffs do not rely on this Ordinance, or refer to it in the allegations of their Complaint, and the Court cannot consider it on a motion under Fed. R. Civ. P. 12(b)(6). Triplett will be able to reassert her qualified immunity defense at the summary judgment stage after an opportunity for discovery.

under Rule 12." *Id*. at 433-34 (internal quotation marks and citation omitted) (alteration in original). The Court must accept the allegations of Plaintiffs' Complaint, which allege (and at a minimum plausibly suggest the inference) that Triplett possessed knowledge that she lacked probable cause to charge Christopher Garner personally, and therefore concludes that Triplett is not entitled to qualified immunity at this stage of the proceedings on claims that otherwise survive Defendants' motions to dismiss based upon allegations that Triplett issued Violations charging Christopher Garner and Olivia Hemaratanatorn personally with misdemeanor violations knowing that they were not legally responsible on the charge and with knowledge that she did not have probable cause to charge them.

2.     **The City of Inkster is entitled to dismissal of all tort claims against it on the basis of governmental immunity.**

The City of Inkster argues that it is entitled to immunity from suit for all state law tort claims asserted against it under Michigan's Governmental Tort Liability Act ("GTLA"), Mich. Comp. Laws §§ 691.1401, *et seq.* Under the GTLA, a governmental agency (there is no dispute that Inkster is a governmental agency under the GTLA, *see* Mich. Comp. Laws § 691.1401(a), (e)), "is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." (Mich. Comp. Laws § 691.1407(1).) "'Governmental function is an

activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law.'" *Mack v. City of Detroit*, 467 Mich. 186, 204 (2002) (quoting MCL 691.1401(f)).[5] The performance of inspections as authorized by statute and enforcement of city ordinances is a governmental function. *Moskwa v. Gracik*, No. 277439, 2008 WL 1914798, at *3 (Mich. Ct. App. May 1, 2008) ("State law provides local units of government the enabling authority to administer and enforce recognized model building codes within their political boundaries [and] [b]ecause the performance of inspections was authorized by statute, Almont Township was engaged in the exercise or discharge of a governmental function").

---

[5] Plaintiffs suggest in their Response that the City was not exercising a governmental function in carrying out the IPMC because the IPMC as a whole is "facially invalid," apparently because the City, when adopting the IPMC, failed to specify the exact version of the IPMC that it was adopting. (Pls.' Resp. to City's Mot. 20) (citing Compl. ¶ 8.) The Court rejects this one-sentence, poorly developed argument. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Indah v. U.S. S.E.C.*, 661 F.3d 914, 924 (6th Cir. 2011) (internal quotation marks and citation omitted). Such a claim is not plausibly pled in the Complaint and, as the City points out, this would not necessarily deprive the City of immunity for actions taken pursuant to the IPMC. *See, e.g., Central Advertising Co. v. City of Novi*, 91 Mich. App. 303, 313 (1979) (noting that "the mere fact that an ordinance has been invalidated does not strip the city of its mantle of governmental immunity"). Plaintiffs make no plausible allegation or argument as to why the City would be stripped of its governmental immunity on this basis.

When filing suit against a governmental entity, it is the plaintiff's burden to "plead her case in avoidance of immunity." *Mack*, 467 Mich. at 198. "A plaintiff pleads in avoidance of governmental immunity by stating a claim that fits within a statutory exception or by pleading facts that demonstrate that the alleged tort occurred during the exercise or discharge of a nongovernmental or proprietary function." *Id*. at 204. The GTLA provides that immunity shall not apply to a governmental unit's performance of a "proprietary function." Mich. Comp. Laws § 691.1413. "Proprietary function" is defined as "any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency, excluding, however, any activity normally supported by taxes or fees." *Id*.

Plaintiffs argue that they have pleaded in avoidance of governmental immunity by claiming the City is driven by profit making, referring the Court to Count VII of the Complaint, entitled "Municipal Liability." (Pls. Resp. to City's Mot. 20.) This Count of the Complaint does not mention the GTLA or the proprietary function exception on which Plaintiffs seek to rely. The Court assumes that Plaintiffs are directing the Court's attention to the allegations of paragraph 146 of the Complaint, which states:

> The reason that the City and their Agents fail in this respect is because they are driven by profit making rather than a legitimate governmental interest in preserving and protecting the safety and welfare of occupants

of housing. The City's desired purpose is to set up homeowner's [sic] to fail so they can issue tickets that cannot be contested in court in order to generate funding to finance their cash-strapped municipality.

(Compl. ¶ 146.)[6] As Judge Goldsmith concluded in characterizing virtually identical allegations by GPM against the City of Redford in *Garner Properties*, *supra*, as a "speculative hint at the nongovernmental/proprietary-function exception," such allegations are insufficient to plead in avoidance of governmental immunity. 2017 WL 3412080, at *14. As Judge Goldsmith recognized, in determining whether an activity is conducted "primarily for profit," courts consider "whether a profit is actually produced and, if so, where the profit is deposited and spent." *Id.* at *15. Plaintiffs' Complaint contains no allegations that would plausibly suggest that the City operated its code enforcement primarily to make a profit or, if it did, where it deposited and spent that money. The Court concludes that governmental immunity applies and dismisses all of Plaintiffs' state tort law claims against the City, i.e. Count I (to the extent it alleges a due process claim under the Michigan Constitution), Count XII (Malicious Prosecution), Count XIII (Abuse of Process), Count XIV

---

[6] Plaintiffs also attach to their Response two pages from the City's June 30, 2017 Budget Report apparently to bolster their proprietary function argument. This information was not referred to in Plaintiff's Complaint and was not attached to the Complaint and cannot be considered at this stage of the proceedings. In any event, in and of itself, this additional information does not plausibly suggest that the "primary purpose" of the City's enforcement of its rental property ordinances is profit-making, as required to come within the proprietary function exception.

(Assumpsit/Unjust Enrichment) and Count XV (Defamation Per Se).

## B. Defendants McKenna and Wright's Motion to Dismiss

### 1. Plausibility under *Twombly* and *Iqbal* of Plaintiffs' due process claims against McKenna and Wright.

McKenna and Wright argue that Plaintiffs' due process claims as alleged against them are facially implausible because Plaintiffs assert this claim under *Art. 5* of the Constitution, and not under the *Fifth Amendment*, as made applicable to the States via the Fourteenth Amendment. (ECF No. 18, McKenna and Wright Mot. 7-8.) Indeed, as Plaintiffs admit, they did improperly cite to Art. V of the United States Constitution and Article 1, Section 17 of the Michigan Constitution in Count I of their Complaint. (ECF No. 23, Pls. Resp. to McKenna and Wright's Mot. 11.)

As discussed at the hearing on the motions to dismiss, the Court will permit Plaintiffs to amend Count I of the Complaint *only* and *only* to correct this pleading error. Plaintiffs shall have fourteen (14) from the date of this Opinion and Order to submit their Amended Complaint correcting that pleading error. Defendants shall be permitted to answer or otherwise respond to that amended corrected error Count as permitted by the Federal Rules of Civil Procedure.

### 2. Plaintiffs have failed to allege a plausible federal malicious prosecution claim against McKenna and Wright.

A Fourth Amendment malicious prosecution claim under 42 U.S.C. § 1983

requires the Plaintiff to prove the following:

> To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, "as a consequence of a legal proceeding," the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (citations omitted) (alterations in original). A malicious prosecution claim can be based only on the initiation of *criminal*, not civil, proceedings. *See, e.g. Maddox*, 866 F.3d at 390 ("To succeed on her claim, Miller must first establish that a criminal prosecution was initiated against her and that Maddox made, influenced, or participated in the prosecution decision.").

"For malicious prosecution, 'the term 'participated' should be construed within the context of tort causation principles. Its meaning is akin to 'aided.' To be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating.'" *France v. Lukas*, 836 F.3d 612, 625 (6th Cir. 2016) (quoting *Sykes*, 625 F.3d at 308 n. 5).

Examples of "participation" include giving false testimony at a preliminary hearing, making misrepresentations and omissions in an application for a warrant or in an investigative report that were relied on by the prosecutor in proceeding against a plaintiff. *Maddox*, 866 F.3d at 390 (quoting *Sykes*, 625 F.3d at 314-17).[7]

As to Defendants McKenna and Wright, the Court concludes that the allegations of the Complaint fail to plausibly suggest that they "aided" in the City and Triplett's decision to file criminal charges against Christopher Garner or Olivia Hemaratanatorn. Plaintiffs allege generally that "the Defendants made, influenced, or participated in the decision to prosecute." (Compl. ¶ 104.) This bare legal assertion that does not even attempt to distinguish among the Defendants, and is devoid of any factual heft, fails to satisfy Plaintiffs' pleading burden as against McKenna and Wright under *Twombly*. In further support of their contention that they have stated a malicious prosecution claim against McKenna and Wright, Plaintiffs direct the Court to Count Five of their Complaint titled "Individual Liability of

---

[7] Plaintiffs allege in their Complaint "[t]he criminal proceedings brought against Plaintiffs have all been resolved in favor of the Plaintiffs, either by outright dismissal of the charges or through pleading the criminal charges down to civil infractions requiring payment of a fine." (Compl. ¶ 107.) The Court must assume then, and only for purposes of this motion to dismiss, that Plaintiffs have adequately alleged (at least as to one or more of the Plaintiffs) the favorable termination prong of the malicious prosecution analysis. Indeed, McKenna and Wright do not challenge this prong of the analysis in their motion to dismiss. Again, challenges to this critical factual issue can be asserted on summary judgment.

Defendants." (Compl. ¶¶ 125-37.) Nothing in these paragraphs suggests the direct involvement of either McKenna or Wright in the ultimate decisions (made by Triplett) to charge Plaintiffs with misdemeanors. Plaintiffs allege that "Jim Wright and McKenna Associates, Inc. are specifically those responsible for handling inspections, issuing notices, issuing reports, and handling appeals under the City's adopted IPMC." (Compl. ¶ 129.) Nothing in the Complaint suggests that either McKenna or Wright gave false testimony or otherwise actively "aided" in the decisions to prosecute. Indeed in all of Count II, which sets out Plaintiffs' federal malicious prosecution claim, it is clear that the conduct of which Plaintiffs complain is the alleged actions of Triplett and the City in "issu[ing] misdemeanor criminal violations to individuals who did not own property in the City of Inkster in violation of their own ordinance and constitutional protections," and forcing Plaintiffs to pay fines to the City despite a lack of reasonable suspicion to believe they had committed the violations. (Compl. ¶¶ 95-96.) Plaintiffs allege that "Defendants" engaged in "unconstitutional conduct of pressing civil and criminal charges against the individuals who sign registration paperwork on behalf of a corporate entity as opposed to the actual offender . . . for the sole purpose of hanging the threat of criminal charge . . . on that individual's record." (Compl. ¶ 99.) The only exhibit attached to Plaintiffs' Complaint that even references McKenna is Exhibit E, which is a copy of an Email exchange between an individual

apparently from McKenna who is not a Defendant in this case (Curt Kropp) about an appeal of a directive to GPM to install an egress window, suggesting that GPM contact Defendant Wright for further clarification. (Compl. Ex. E.) There are no Notices of Violation or charging tickets referred to or attached to Plaintiffs' Complaint signed by Wright or by any other individual from McKenna. Plaintiffs offer a hint that McKenna and Wright were involved in some unspecified chain of events that preceded the City and Triplett's decision to issue a misdemeanor violation to Plaintiffs. But Plaintiffs' Complaint contains insufficient allegations to plausibly suggest a malicious prosecution claim against McKenna or Wright.

Because nothing in Count II and nothing in Count V (individual liability of defendants) plausibly suggests McKenna and Wright's active participation in the decision to press civil and criminal charges against the Plaintiffs, the Court GRANTS Defendants McKenna and Wright's motion to dismiss Plaintiffs' malicious prosecution claim against them.

McKenna and Wright also argue that Plaintiffs' malicious prosecution claim fails for the separate and independent reason that Plaintiffs fail to allege that they suffered a deprivation of liberty as understood under Sixth Circuit precedent. McKenna and Wright rely on *Noonan v. County of Oakland*, 683 F. App'x 455 (6th Cir. 2017), in which the Sixth Circuit interpreted the Supreme Court's directive in

*Albright v. Oliver*, 510 U.S. 266, 274 (1994), to require that a "'plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, *apart from the initial seizure*.'" 683 F. App'x at 463 (quoting *Sykes*, 625 F.3d at 308-09) (emphasis in original). "That is," the Sixth Circuit explained, "the initial arrest alone is an insufficient deprivation of liberty." *Id*. Noonan's deprivation, i.e. receiving a summons to appear in court, was "even less a deprivation than an arrest." *Id*. Noonan did not appear for his August 9, 2010 arraignment but was required to attend a status conference in September and requested, and was administered, a polygraph exam which tended to establish Noonan's innocence. *Id*. at 460. On November 10, 2010, the prosecuting attorney sought and obtained a nolle presqui and the charges were dismissed. *Id*. at 459. Noonan filed suit under section 1983 claiming malicious prosecution. The Sixth Circuit, reviewing the district court's denial of qualified immunity to the investigating officer who offered false information that led to Noonan's prosecution, found the "determinative issue" to be whether Noonan suffered a deprivation of liberty. The Sixth Circuit observed that Noonan had not been arrested or incarcerated, required to post bail or bond, or been subject to any travel restrictions and therefore had not suffered a deprivation of liberty:

> In short, despite the aggravation, financial cost, and personal humiliation that Noonan suffered as result of these false charges, we must conclude as a matter of law that he did not suffer a deprivation of liberty as understood in our Fourth Amendment jurisprudence.

683 F. App'x at 463. Courts since *Noonan*, including the Sixth Circuit, have applied this rationale in dismissing malicious prosecution claims. *See Cummin v. North*, 731 F. App'x 465, 473 (6th Cir. 2018) (citing *Noonan's* "holding" that "requiring attendance at court proceedings does not constitute constitutional deprivation of liberty" and concluding that having to appear five separate times at court proceedings did not constitute a deprivation of liberty where plaintiff was not arrested, incarcerated, required to post bail or pay any bond, and was never subject to travel restrictions); *Stallworth v. Champine*, No. 16-cv-10696, 2018 WL 690997, at *8 (E.D. Mich. Feb. 2, 2018) (relying on *Noonan* and finding that having to attend two preliminary hearings before having his misdemeanor ticket dismissed was "insufficient to establish a 'deprivation of liberty'" and granting defendant summary judgment on plaintiff's malicious prosecution claim).

While these cases offer support for Defendants' contention that Plaintiffs in this case may not have suffered a deprivation of liberty as that term is understood in current Sixth Circuit jurisprudence, the Plaintiffs argue that they have adequately alleged a cognizable deprivation and that they are entitled to conduct discovery to

determine the extent of the deprivations suffered by these Plaintiffs. Although this is a close call given the borderline generality of the allegations of Plaintiffs' Complaint regarding the deprivations they suffered, the Court notes that each of the cases discussed *supra*, including *Noonan*, was decided at the summary judgment stage and not on a motion to dismiss. Were the Court not granting McKenna and Wright's motion to dismiss the federal malicious prosecution claim for failure to state a claim as discussed *supra*, it would not dismiss the claim on this separate and independent basis at this juncture.[8]

Accordingly, the Court dismisses Plaintiffs' federal malicious prosecution claim against McKenna and Wright for failure to plausibly suggest their involvement in the ultimate decision to issue the contested violations.

---

[8] Defendants Triplett and the City of Inkster also argue for dismissal of Plaintiffs' federal malicious prosecution claim in a very perfunctory manner, simply "incorporating" McKenna and Wright's *Noonan's* argument that Plaintiffs fail to allege a deprivation of liberty, which the Court rejects at this stage of the proceedings. (Triplett and City of Inkster Mot. 21-22.) Triplett and the City of Inkster also assert that "Plaintiffs do not allege that Defendant Triplett or anyone else provided false testimony or misleading information material to the decision to criminally prosecute Plaintiffs for purported code violations." (*Id*. at 22.) However, as discussed *supra*, the Plaintiffs *have* made such allegations as to Triplett and the City of Inkster, alleging the knowing falsity and inaccuracy of the criminal violations filed against them. (Compl. ¶¶ 47, 54-64, 88-106, Exs. D, F.) Thus, to the extent such an argument was made by the City and Triplett, the Court DENIES the motion to dismiss Plaintiffs' federal malicious prosecution claim against them on the basis of a failure to adequately allege a deprivation of liberty at this pleading stage.

## IV.    CONCLUSION

For the foregoing reasons, the Court:

1)    GRANTS Triplett's motion to dismiss, on the basis of qualified immunity, Plaintiffs' claims against her alleging a due process violation based upon her issuance of Notices of Violation that did not contain information regarding a right to appeal;

2)    DENIES Triplett and the City's motion to Dismiss Count II;

3)    GRANTS the City's Motion to Dismiss Plaintiffs' state law claims (Counts XII-XV);

4)    GRANTS Defendants Wright and McKenna's Motion to Dismiss Count II of Plaintiffs' Complaint;

5)    GRANTS Defendants' motions to dismiss Count I of the Complaint but GRANTS Plaintiffs leave to amend Count I of the Complaint.  The Plaintiffs' Amended Complaint, consistent with this Opinion and Order, shall be filed within fourteen (14) days of the date of this Opinion and Order.  Plaintiffs' Amended Complaint shall also specify which of the remaining Counts of the Complaint are asserted against *which* specific Defendants.

IT IS SO ORDERED.


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  August 15, 2018

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 15, 2018.

s/Deborah Tofil
Case Manager