UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARNER PROPERTIES &
MANAGEMENT, LLC,                       Case No. 17-cv-13960
CHRISTOPHER GARNER and
OLIVIA HEMARATANATORN                  Paul D. Borman
                                       United States District Judge

                    Plaintiffs,

v.

CITY OF INKSTER, GINA
TRIPLETT, MCKENNA
ASSOCIATES, INC. and JIM
WRIGHT,

                    Defendants.
_____/

**OPINION AND ORDER GRANTING THE PARTIES' JOINT MOTION
FOR CERTIFICATION OF SETTLEMENT CLASS AND PRELIMINARY
APPROVAL OF SETTLEMENT AND CLASS NOTICE (ECF NO. 48)**

This is a putative class action on behalf of a class of residential property

owners who have been fined for failing to have a certificate of occupancy for a rental

property and who allege that the defendants violated certain due process rights

related to the administration of the city of Inkster's Building Regulations Code and

its adoption of the International Property Maintenance Code. After engaging in

formal discovery and lengthy settlement negotiations, the parties have reached a

settlement and now before the Court is the parties' Joint Motion for Certification of

Settlement Class and Preliminary Approval of Settlement and Class Notice. (ECF

No. 48.) For the reasons that follow, the Court GRANTS the parties' Joint Motion for Certification of Settlement Class and Preliminary Approval of Settlement and Class Notice, as amended herein.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Plaintiffs' First Amended Complaint

Plaintiffs filed a Class Action Complaint on December 7, 2017 and an Amended Class Action Complaint on August 23, 2018. (ECF Nos. 1, 33.) Plaintiffs bring this putative class action "on behalf of a class of persons who own residential real property in the City of Inkster (the "City") and have been fined for failing [to] have a certificate of occupancy for a rental property." (First Amended Complaint ("FAC") ¶ 1.) Plaintiffs allege that under the Home Rule City Act (Mich. Comp. Laws §§ 117.1 *et seq*.), municipal entities like the City are empowered to adopt certain laws, codes, or rules for building maintenance control in their jurisdictions. (*Id.* ¶ 2.) Pursuant to this authority, the City has adopted the International Property Maintenance Code ("IPMC") through City Ordinance § 150.001, to regulate and govern "the conditions and maintenance of all property, buildings and structures[] by providing the standards for supplied utilities and facilities and other physical things and conditions essential to ensure that structures are safe, sanitary and fit for occupation and use . . . ." (*Id.* ¶¶ 5-6) (quoting Ordinance § 150.001.) The Ordinance provides "for the issuance of permits and collection of fees" and directs that a

"Building Official shall be designated as the code official and shall be the official in charge of the enforcement" of the "City Code" that adopts and embodies the provisions of the IPMC. (*Id*. ¶ 6.) The Code provides that "[a]ny person who shall violate a provision of this Code . . . shall be guilty of a misdemeanor and shall be liable for a fine of not less than $100 nor more than $500." (*Id*.) This "Code," i.e. the IPMC as adopted by the City of Inkster, "governs the regulation of maintaining existing residential real property within the City." (*Id*. ¶ 7.)

Plaintiffs further allege that the City has enacted other ordinances that regulate the operation of rental housing within the City that require an owner of investment real estate who wants to rent property to register the property, obtain an inspection of the property, complete necessary repairs under the applicable code, and thereafter obtain a certificate of compliance. (*Id*. ¶ 9.) Inspections under these ordinances are performed by a "Code Official" who has been trained in these codes and ordinances and who "knows, or should know, the requirements of the IPMC and other applicable codes." (*Id*. ¶ 10.) The City's inspection under these ordinances is governed by the City's adoption of the IPMC, and inspection requires compliance with the IPMC such that an owner of rental property cannot obtain a certificate of compliance from the City until he or she passes an inspection pursuant to the IPMC. (*Id*. ¶ 11.)

Plaintiffs allege that the IPMC contains its own set of procedural guidelines, but that the City refuses to comply with them and instead issues civil infraction fines and misdemeanor violations to the owners for failure to bring properties in compliance with the IPMC by issuing tickets for failing to obtain a certificate of occupancy under the City's local ordinances, without regard to the Notice requirements of the IPMC, specifically including the right to appeal. (*Id.* ¶¶ 12, 19-20.) Unaware of their right to appeal, these homeowners and non-owners are forced to succumb to the power of the City and City Officials and pay countless fines and/or perform unnecessary repairs. (*Id.* ¶¶ 25-29.) Failing to inform the property owners of their right to appeal the code officials' determinations under the IPMC has removed any possibility for raising a challenge by the homeowner to the code official's determination or interpretation of the IPMC. (*Id.* ¶ 31.) The only option for the homeowner is going to court after the violation has issued and the fine or penalty imposed, at which point the homeowner can no longer contest the code officials' determination because the IPMC deems the failure to obtain a certificate of occupancy as a strict liability offense. (*Id.* ¶¶ 31-33.)

## B. Procedural Background

The parties filed their Original Class Action Complaint on December 7, 2017. (ECF No. 1.) Defendants subsequently filed motions to dismiss (ECF Nos. 18, 20), which were granted in part and denied in part, with leave to amend Count I of the

Complaint. (ECF No. 32.) During that time, the Court also entered a Stipulation and Order for Preliminary Injunction enjoining the City of Inkster from issuing any criminal or civil charges under the City's Building and Housing codes and ordinances to any individual or entity who is not the owner of record for the alleged offending property. (ECF No. 27.) On August 23, 2018, Plaintiffs filed their First Amended Complaint. (ECF No. 33.)

The parties subsequently engaged in formal discovery and commenced multiple, formal settlement negotiations, including with the assistance of facilitation with Judge Victoria A. Roberts. A settlement was reached on June 13, 2019 and the terms of the settlement were placed on the record. (06/13/19 Minute Entry.)

On September 23, 2019, Representative Plaintiff Garner Properties & Management, LLC and Defendants City of Inkster, McKenna Associates, Inc. and Jim Wright filed this Joint Motion for Certification of Settlement Class and Preliminary Approval of Settlement and Class Notice. (ECF No. 48, "Joint Motion".)[1] The proposed Settlement Agreement is attached as Exhibit 1 to the Joint

---

[1] Garner Properties & Management, LLC is the only representative Plaintiff. The claims of Plaintiffs Christopher L. Garner and Olivia Hemaratanatorn have been resolved via an Offer of Judgment from the City of Inkster under Fed. R. Civ. P. 68 and a stipulated order of dismissal against Defendants McKenna Associates and Wright. (Joint Mot. at 1 n.1, PgID 697; ECF No. 50, Stipulated Order for Dismissal.) In addition, Defendant Gina Triplett has been dismissed with prejudice. (ECF No. 47.)

Motion. (ECF No. 48-1, Settlement Agreement, PgID 722-40.) Attached as exhibits to the Settlement Agreement itself are the proposed "Order Preliminarily Approving Class Action Settlement" (Settlement Agreement Ex. A, Proposed Preliminary Approval Order, PgID 743-46), the proposed Notice that will be sent to class members (Settlement Agreement Ex. B, Proposed Notice, PgID 748-51), and a proposed "Final Approval Order and Judgment" that the parties request the Court enter after conducting the final settlement approval hearing (Settlement Agreement Ex. C, Proposed Final Approval Order, PgID 753-59).

Plaintiffs seek to certify a Settlement Class comprised of the following:

> <u>Class</u>: All persons or entities that paid any registration or inspection fee to the City of Inkster under the City's Rental Dwellings or Rental Units section of its Building Regulations Code from December 7, 2014 through the date of the Order Preliminarily Approving the Settlement Class.[2]

(Joint Motion at 3, PgID 699; Settlement Agreement ¶ 3, PgID 725-26.) The parties assert that the Rule 23(a) and 23(b)(3) requirements for class certification have been met, and that the settlement satisfies the requirements for preliminary approval.

Defendants assert they believe they have numerous and complete defenses to Plaintiffs' claims and state that they do not object to the request for certification solely for settlement purposes only. If settlement is not approved as provided in the

---

[2] Excluded from the Settlement Class are Defendants, including any of their parents, subsidiaries, and affiliates, as well as their officers and directors. Commercial certificates of compliance are also excluded. (Settlement Agreement, ¶ 3.)

Settlement Agreement, the parties agree that the certification will be set aside. (Joint Mot. at 5, PgID 701.)

### C.    Essential Terms of the Proposed Settlement

The parties agree that Defendants City of Inkster, McKenna Associates, Inc. and Jim Wright will establish a Settlement Fund in the amount of $130,000.00, to be used in significant part to pay the claims of the Settlement Class Members entitled to participate in the distribution of the settlement proceeds pursuant to the Settlement Agreement. (Settlement Agreement ¶ 7.) Class counsel shall apply for an award of attorney's fees in the amount of $43,333.33 (one-third of the Settlement Fund), plus reasonable out-of-pocket expenses (which fees and expenses shall be paid before any other deduction from the Fund). (*Id.* ¶ 10.) Defendants will pay named Plaintiff $10,000.00 from the Settlement Fund for representing the Settlement Class as the Class Representative, and the cost of administering the claims through a third-party claims administrator (here, Class-Settlement.com) will also be paid from the Settlement Fund. (*Id.* ¶¶ 10, 14.) Class counsel shall provide Defendants detailed documentation for any and all costs to be deducted from the Fund prior to filing Plaintiff's Motion for Attorney Fees and Costs, and Defendants shall have the right to object to any costs they believe are not reasonable, appropriate or otherwise necessary.

Class members may make a claim for up to $100.00 each for each registered residential rental property of that Class Member,[3] and valid claims will be paid at the member's pro-rata share of the settlement fund (minus payments for attorney fees and costs and payment to the Class Representative outlined above). (*Id.* ¶ 9.)

## II.    LEGAL STANDARD

Class actions in federal court are governed by Federal Rule of Civil Procedure 23 and class action suits may be settled only with the Court's approval. *See* Fed. R. Civ. P. 23(e). Before taking the first step under Rule 23(e) and directing the parties to disseminate notice, a court presented with a proposed class action settlement will first hold a preliminary hearing. As another court in this District explained, class action settlement approval involves "a three-step process: (1) preliminary approval of the proposed settlement at an informal hearing; (2) dissemination of mailed and/or published notice of the settlement to all affected class members; and (3) a formal fairness hearing or final approval hearing, at which class members may be heard regarding the settlement," where evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be offered. *Doe v. Deja Vu Servs., Inc.*, No. 2:16-cv-10877, 2017 WL 490157, at *1 (E.D. Mich. Feb. 7, 2017) (Murphy, J.) (citing *Fussell v. Wilkinson,* No. 1:03-CV-704, 2005 WL 3132321, at

---

[3] The parties note that the "inspection fees at issue" range from $40.00 to $235.00. (Joint Mot. at 4 n.3, PgID 700.)

*3 (S.D. Ohio Nov. 22, 2005)); *see also Williams v. Vukovich,* 720 F.2d 909, 920-21 (6th Cir. 1983) (explaining that the approval of a consent decree—"essentially a settlement agreement subject to continued judicial policing"—involves three steps: "[t]he proposed decree should be preliminarily approved, interested persons given notice, and a reasonableness determination made after a hearing is held"). "This procedure, commonly employed by federal courts and endorsed by a leading class action commentator, serves the dual function of safeguarding class members' procedural due process rights, and enabling the Court to fulfill its role as the guardian of the interests of the class." *Deja Vu Servs.*, 2017 WL 490157, at *1 (citing 2 *Newberg on Class Actions*, § 11.25 *et seq.*). These functions should be kept in mind throughout the settlement approval process; it has been said that "[b]ecause there is typically no client with the motivation, knowledge, and resources to protect its own interests, the judge must adopt the role of a skeptical client and critically examine the class certification element, the proposed settlement terms, and procedures for implementation." *Machesney v. Lar-Bev of Howell, Inc.*, No. 10-10085, 2017 WL 2437207, at *5 (E.D. Mich. June 6, 2017) (internal quotation marks omitted) (quoting MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.61, *Judicial Role in Reviewing a Proposed Class Action Settlement*, at 374-75).

This matter is at the preliminary approval stage. Courts have applied different standards at this phase, but it is clear that the bar is lower for preliminary approval

than it is for final approval.[4] *See, e.g., Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *11 (E.D. Mich. Aug. 2, 2010) ("[T]he Settlement Agreement should be preliminarily approved if it (1) 'does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for

---

[4] The more exacting inquiry at the final approval stage hinges largely on the question of whether the proposed settlement is "fair, reasonable, and adequate" under Rule 23(e), which instructs courts to consider certain factors when deciding whether the settlement meets this standard:

(A)  the class representatives and class counsel have adequately represented the class;
(B)  the proposal was negotiated at arm's length;
(C)  the relief provided for the class is adequate, taking into account:
(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and
(D)  the proposal treats class members equitably relative to each other.

Before this Rule 23(e)(2) amendment, circuit courts had developed their own multi-factor inquiries. According to the 2018 Amendment's Advisory Committee Notes, so long as courts use the 23(e)(2) factors as the primary framework, courts may still consider circuit-specific factors in the analysis. In the Sixth Circuit, those factors are "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

attorneys,' and (2) 'appears to fall within the range of possible approval.'"); *Deja Vu Servs.*, 2017 WL 490157, at *1 (same); *see also Berry v. Sch. Dist. of City of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998) ("Unless it appears that the compromise embodied in the agreement is illegal or tainted with collusion, the court must order that notice be given to the class of the proposed agreement and must order a fairness hearing.") (citing *Williams*, 720 F.2d at 921)).

This Court has granted preliminary approval where a proposed settlement:

(a) has potential for final approval as being fair, adequate and reasonable; (b) is the product of serious, informed, arms-length non-collusive negotiations; (c) has no obvious deficiencies; (d) does not improperly grant preferential treatment to Class Representatives; (e) falls sufficiently within the range of possible approval; and (f) does not disclose grounds to doubt its fairness . . . .

*In re Packaged Ice Antitrust Litig.*, No. 08-01952, 2010 WL 5638219, at *1 (E.D. Mich. Sept. 2, 2010) (Borman, J.); *see also Griffin v. Flagstar Bancorp, Inc.*, No. 10-10610, 2013 WL 4779017, at *2 (E.D. Mich. July 29, 2013) (Borman, J.) (preliminarily approving a proposed settlement after finding that (i) the proposed Settlement resulted from extensive arm's-length negotiations, (ii) the Settlement Agreement was executed only after Class Counsel had conducted appropriate investigation and fact-finding regarding the strengths and weaknesses of Plaintiffs' claims, (iii) Class Counsel have substantial experience in ERISA class action cases and Class Counsel concluded that the proposed Settlement is fair, reasonable and adequate, and (iv) the proposed Settlement is sufficiently fair, reasonable and

adequate to warrant sending notice of the proposed Settlement to the Settlement Class).

## III.   ANALYSIS

### A.   Rule 23 Class Certification

To merit class certification, the Plaintiff must show that, as required under Fed. R. Civ. P. 23(a), "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *In re Whirlpool Corp. Front Loading-Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (citing Fed. R. Civ. P. 23(a)). "These four requirements—numerosity, commonality, typicality, and adequate representation—serve to limit class claims to those that are fairly encompassed within the claims of the named plaintiffs because class representatives must share the same interests and injury as the class members." *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

"In addition to fulfilling the four prerequisites of Rule 23(a), the proposed class must also meet at least one of the three requirements listed in Rule 23(b)." *Id.* Where, as here, the Plaintiffs seek to certify a class under Rule 23(b)(3), the Plaintiffs must demonstrate 'that the questions of law or fact common to class members

predominate over any questions affecting only individual members' and that the class action is 'superior to other available methods' to adjudicate the controversy fairly and efficiently." *Id*. at 850-51. "The plaintiffs carry the burden to prove that the class certification prerequisites are met, and the plaintiffs, as class representatives, [are] required to establish that they possess the same interest and suffered the same injury as the class members they seek to represent." *Id*. at 851 (internal citation omitted).

### 1.    Numerosity

The Settlement Class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is a fact specific inquiry that turns upon such factors as geographic location and the ease of identifying class members, but there is no strict numerical test to determine when the class is large enough or too numerous to be joined under the Federal Rules of Civil Procedure. *Senter v. General Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir. 1976); *Marquis v. Tecumseh Products Co.*, 206 F.R.D. 132, 156 (E.D. Mich. 2002). "[I]t generally is accepted that a class of 40 or more members is sufficient to satisfy the numerosity requirement." *Davidson v. Henkel*, 302 F.R.D. 427, 436 (E.D. Mich. 2014) (noting that "[t]he modern trend is to require at a minimum 'between 21 and 40' class members") (citations omitted).

The parties estimate, based upon the records of the City of Inkster, that "there are approximately 4,000 registered rentals that make up the claims of the Class," and thus that the numerosity requirement of Rule 23(a)(1) is met for purposes of certifying a Settlement Class only. (Joint Mot. at 6, PgID 702.) The Court finds that the numerosity requirement is satisfied. *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (recognizing that "while there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement).

### 2. Commonality

Rule 23(a)(2) requires that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality looks to the questions of law or fact "among the class members generally," 1 *Newberg on Class Actions* § 3:26 (5th ed. 2018) and seeks "to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)) (emphasis omitted). This provision does not demand that all questions of law and fact raised in the complaint are common, but simply requires a common question or law or fact. *Olden v. LaFarge Corp.*, 203 F.R.D. 254, 269 (E.D. Mich. 2001), *aff'd*, 383 F.3d 495 (6th Cir. 2004). A common question of law or fact exists when it can be shown that all class members suffered the same injury. *Dukes*, 564 U.S. at 349–50. Class claims must depend upon a common contention "capable of classwide

resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

The parties here contend that virtually all issues of law and fact in this case are common, including, but not limited to, the following:

1. Did the City of Inkster's alleged lack of procedure for obtaining an administrative search warrant under the Building and Building Regulations Code violate the Fourth Amendment?

2. Did the City of Inkster fail to give proper notices to owners or managers of registered rentals pursuant to its adoption of the IPMC?

3. Is the City of Inkster obligated to reimburse and pay restitution to Plaintiff and members of the class?

4. Did the members of the class consent to the inspections at issue?

5. Was the City of Inkster's enacted version of the IPMC ever applied to any members of the class unconstitutionally or otherwise?

(Joint Mot. at 7-8, PgID 703-04.)  The Court finds that these common questions of law and fact for members of the Settlement Class satisfy the commonality requirement pursuant to Rule 23(a)(2).

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims and defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "A claim is typical if it arises from the same event or practice or course of conduct that

gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. Century Tel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (internal citation omitted). "[T]he commonality and typicality inquiries overlap to a degree, but commonality focuses on similarities, while typicality focuses on differences." *Merenda v. VHS of Michigan, Inc.*, 296 F.R.D. 528, 537 (E.D. Mich. 2013) (internal quotation marks and citation omitted). In determining whether the requisite typicality exists, a court must inquire whether the interests of the named plaintiff are "aligned with those of the represented group," such that "in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996). The typicality requirement is satisfied if the representative's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie,* 511 F.3d at 561; *see also Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) ("The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class.").

Here, the named Plaintiff's claims and those of any putative class members arise from the same course of conduct by Defendants and the claims all are based on the same legal theory: the alleged violation of the same ordinance and same due process claims. The parties agree the typicality requirement has been met for

purposes of certifying a Settlement Class only. The Court similarly finds that Plaintiffs have meet the typicality requirement of Rule 23(a)(3).

### 4. Adequacy of Representation

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "There are two criteria for determining whether the representation of the class will be adequate: 1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 524-25; *see also Dukes*, 564 U.S. at 348 (explaining that the class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only[, and thus] ... to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members."). "Thus, 'the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class.'" *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013) (Kethledge, J.) (quoting *Dewey v. Volkswagen AG*, 681 F.3d 170, 183 (6th Cir. 2012)). "These requirements are scrutinized more closely, not less, in cases involving a settlement class," because "'the need for the adequacy of representation finding is particularly acute in settlement class situations.'" *Id.* (quoting *In re*

*General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 795 (1995)).

The parties assert that Plaintiff is an adequate representative because Plaintiff is a property manager and has registered residential rental properties within the City of Inkster and paid fees under the City's ordinance and thus has suffered the same type of alleged damage as the class. (Joint Mot. at 10, PgID 706.) It thus appears that Plaintiff shares "common interests with unnamed members of the class." *Senter*, 532 F.2d at 524-25. In addition, the parties agree that Mark K. Wasvary and Aaron D. Cox are adequate class counsel and have been certified as class counsel in multiple lawsuits against municipalities where restitution was sought and received for the Class. (Joint Mot. at 10 & n. 5, PgID 706-07.)

However, with regard to the inquiry as to whether the class representatives "will vigorously prosecute the interests of the class through qualified counsel," *Senter*, 532 F.2d at 524-25, the Sixth Circuit has raised the issue of whether the named plaintiff's receipt of an "incentive" award for acting as the class representative, especially one that makes the class representative whole, or even more than whole, provides a "*disincentive* for the class members to care about the adequacy of relief afforded unnamed class members, and instead encourage[s] the class representatives 'to compromise the interest of the class for personal gain.'" *In re Dry Max Pampers Litig.*, 724 F.3d at 722 (emphasis in original) (finding that the

named plaintiffs, who received a $1,000-per-child payment while the unnamed class members "receive[d] noting but illusory injunctive relief" "are inadequate representatives, under Rule 23(a)(4), and the district court abused its discretion in finding the contrary."); *see also Machesney*, 2017 WL 2437207, at *11-12 (noting that the requested incentive award, which is 30 times more than the maximum any class member could receive under the settlement agreement, "makes the Court question whether Machesney is an adequate class representative and should continue on as the named plaintiff in this class action").

In this case, the Settlement Agreement proposes to award Plaintiff an "incentive award" of $10,000 "for representing the Settlement Class as the Class Representative." (Settlement Agreement ¶ 10, PgID 728.) However, the unnamed class members are only entitled to an award of "up to $100.00 for each registered residential rental property of that Class Member." (*Id.* ¶ 9, PgID 727-28 (noting "Class Members will be paid 100% of a valid claim [up to $100.00], unless the amount of valid claims exceeds the amount of the Settlement Fund" "minus payments made for attorney's fees and costs as approved by the Court, the costs of Claims Administration *and the payment made to the Class Representative*," in which case the class members receive a pro rata share of the Fund. (*Id.* (emphasis added).) Here, as explained more fully below, the Court approves awarding Plaintiff an incentive award of $1,000.00, instead of $10,000.00. The Court finds that this

reduced award, representing 10 times the recovery of an individual class member, is sufficient to compensate Plaintiff for its work in this matter and will not act as a "*disincentive*" for Plaintiff to care about the adequacy of relief afforded unnamed class members. Accordingly, the Court finds that, as amended herein, Plaintiff meets the adequacy of representation requirement of Rule 23(a)(4).

### 5. Rule 23(b)(3) Requirements

In addition to satisfying the Rule 23(a) requirements, Plaintiffs must show that their proposed class is one of the varieties listed in Rule 23(b). Plaintiffs claim their class is of the Rule 23(b)(3) type.

To certify a Rule 23(b)(3) class, "(1) questions common to the class [must] predominate over questions affecting only individual members, and (2) class resolution [must be] superior to alternative methods for adjudicating the controversy." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008). "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352-53 (6th Cir. 2011) (citing *Beattie*, 511 F.3d at 564). "A plaintiff class need not prove that each element of a claim can be established by classwide proof." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 858 (6th Cir. 2013). Moreover, class certification is superior to

alternative methods of adjudicating the controversy where "class members are not likely to file individual actions [because] the cost of litigation would dwarf any potential recovery." *Id.* at 861. Factors that bear on the predominance and superiority inquiries in the settlement context include the class members' interest in maintaining a separate action, other currently-pending litigation concerning the controversy, and the desirability of concentrating the litigation in a particular forum. *See* Fed. R. Civ. P. 23(b)(3)(A)–(C); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (providing that for settlement-only class certification, a court need not concern itself with Rule 23(b)(3)(D)'s intractable-management-problems factor).

"In addition, Rule 23(b)(3) classes must also meet an implied ascertainability requirement." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017) (citing *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016)). That is because, "unlike (b)(1) and (b)(2) classes, (b)(3) class members are entitled to notice and are able to opt-out of the class." *Cole*, 839 F.3d at 541. "In the Rule 23(b)(3) context, ascertainability aids the inherent efficiencies of the class device by ensuring administrative feasibility, and ... ascertainability is a requirement tied almost exclusively to the practical need to notify absent class members and to allow those members a chance to opt-out and avoid the potential collateral estoppel effects of a final judgment." *Id.* "[T]he ascertainability

requirement ... necessitate[s] 'a class description [that is] sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Id.* (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012)).

The parties assert that "[t]he question of whether or not the Settlement Class was subject to due process and Fourth Amendment violations and is entitled to reimbursement is the common question that must be answered in order for anyone in the class to recover damages" and that "[t]here are no individual issues." (Joint Mot. at 11, PgID 707.) In addition, with regard to the remaining Rule 23(b)(3) factors, the parties claim that: (1) the interest of members to individually control the litigation is low because the costs of the suit is prohibitive to bringing individual actions; (2) no other litigation has been commenced against Defendants; and (3) it is desirable to concentrate the claims in this judicial district, as all claims arise in the City of Inkster, located within the Eastern District of Michigan. (Joint Mot. at 12-13, PgID 708-09.) Finally, the parties assert that Defendant Inkster has "readily accessible records to identify settlement class members" and thus there appears to be "virtually no management problems and the class action procedure would not be unduly burdensome." (*Id.*) The parties have thus made a preliminary showing that the predominance and superiority requirements of Rule 23(b)(3) have been met.

### 6. Summary

The Court therefore conditionally certifies the settlement class, appoints Plaintiff Garner Properties & Management LLC as the class representative, and appoints its attorneys, Mark K. Wasvary and Aaron Cox, as class counsel.

## B. Preliminary Approval

The Sixth Circuit has explained that in approving class action settlements, courts must carefully scrutinize whether the class representatives and class counsel have met their fiduciary obligations to protect class interests. *In re Dry Max Pampers*, 724 F.3d at 718. "[B]y way of background, class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations." *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 309 (6th Cir. 2016). As such, "there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *Id.* While this is "not an indictment of any parties or counsel in particular; it is merely a recognition of the adverse incentives at work in class-action settlements." *Id.* Thus, it is this Court's responsibility to "carefully scrutinize whether the named plaintiffs and counsel have met their fiduciary obligations to the class, and whether the settlement itself is 'fair, reasonable, and adequate.'" *Id.* (quoting Fed. R. Civ. P. 23(e)(2)). District courts must "appraise the reasonableness

of particular class-action settlements on a case-by-case basis, in light of all the relevant circumstances." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986).

At the preliminary approval stage, the Court does not finally decide whether the settlement is fair and reasonable. *See In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 337 (N.D. Ohio 2001) (explaining that preliminary approval "is only the first step in an extensive and searching judicial process, which may or may not result in final approval of a settlement"). Rather, the question now before the Court is simply whether the settlement is fair enough that it is worthwhile to expend the effort and costs associated with sending potential class members notice and processing opt-outs and objections. *See Newberg on Class Actions* § 13:10 (5th ed.); *see also Deja Vu Servs.*, 2017 WL 490157, at *1 (stating that the settlement agreement should be preliminarily approved if it "(1) does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or segments of the class, or excessive compensation for attorneys, and (2) appears to fall within the range of possible approval.") (internal quotation marks omitted). Approval of a class settlement is discretionary with the Court, and the Court's acceptance of the settlement will only be disturbed upon a showing of an abuse of discretion. *Robinson v. Shelby Cty. Bd. of Educ.*, 566 F.3d 642, 647 (6th Cir. 2009); *Laskey v. UAW*, 638 F.2d 954, 957 (6th Cir. 1981).

Here, the parties have jointly moved for preliminary approval of a class action settlement pursuant to Rule 23. They assert that the proposed settlement is fair and reasonable in that all Class Members will be able to make a claim to recoup money and the City of Inkster has agreed to comply with notice requirements under Inkster's enacted version of the IPMC and to have a procedure to seek an administrative warrant when an inspection under its Building Regulations Code is refused. (Joint Mot. at 15-16, PgID 711-12.) As noted above, the essential terms of the settlement include the total settlement fund up to $130,000.00, the provision for payments up to $100 for each registered residential rental property of a class member, proration of those payments if they exceed the allotted amount in the fund, an incentive award of $10,000 to Plaintiff as class representative, attorney fees of $43,333.33 (one-third of the settlement amount), and reasonable out-of-pocket expenses. The parties argue that the Settlement Agreement is fair and reasonable given: (1) the risk of establishing liability and damages and the cost of protracted litigation; (2) the reasonableness of the proposed class recovery, including establishment of up to a $130,000.00 common fund and equal payment to each Class Member with a valid claim; (3) the complexity and likely duration of further litigation and trial if the settlement is not consummated; (4) the parties have engaged in extensive formal discovery, met and conferred on multiple occasions, and Plaintiffs have survived dispositive motions, and thus the parties were fully aware of the strengths and

weaknesses of this case; (5) the settlement is the product of lengthy, well-informed and non-collusive negotiations conducted at arms-length; and (6) the proposed settlement has no "obvious deficiencies" and falls well within the range for approval. (Joint Mot. at 16-22, PgID 712-18.)

The Court preliminarily approves the proposed Settlement Agreement as fair, reasonable, and adequate because it provides reasonable and adequate benefits to the Class Members and reflects the parties' informed judgment as to the likely risks and benefits of litigation. *See, e.g., Sheick*, 2010 WL 3070130, at *12 ("Considering the parties' vigorously-contested legal and factual disputes, the risks, uncertainties, hardships, and delays inherent in continued litigation, and the substantial settlement amount and its salutary and beneficial impact, the settlement terms clearly fall within the range of reasonableness contemplated by Rule 23(e)."). The negotiations of the Settlement Agreement were conducted at arms-length by adversarial parties and experienced counsel, with facilitative assistance from Judge Roberts.

However, there is one provision of the Settlement Agreement that bears more attention; namely, the provision that "[s]ubject to the Court's approval, Plaintiff will be paid $10,000.00 from the Settlement Fund for representing the Settlement Class as the Class Representative." (Settlement Agreement ¶ 10, PgID 728.) As discussed previously, the *most* any Class Member can receive under the Settlement Agreement is $100 for each registered residential rental property of that Class Member. (*Id.* ¶

9.) The proposed $10,000 incentive award therefore is at least 100 times the greater than what any other class member may recover.

Judge Kethledge explained in *In re Dry Max Pampers Litigation*, that the Sixth Circuit "has never approved the practice of incentive payments to class representatives, though in fairness [it has] not disapproved the practice either." *In re Dry Max*, 724 F.3d at 722. "Thus, to the extent that incentive awards are common, they are like dandelions on an unmown lawn—present more by inattention than by design." *Id.* And, the courts have expressed a "sensibl[e] fear that incentive awards may lead to named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." *Id.* (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). In *In re Dry Max Pampers Litigation*, the Sixth Circuit did not lay down a categorical ban on incentive payments, but stated:

> But we do have occasion to make some observations relevant to our decision here. The propriety of incentive payments is arguably at its height when the award represents a fraction of a class representative's likely damages; for in that case the class representative is left to recover the remainder of his damages by means of the same mechanisms that unnamed class members must recover theirs. The members' incentives are thus aligned. But we should be most dubious of incentive payments when they make the class representatives whole, or (as here) even more than whole; for in that case the class representatives have no reason to care whether the mechanisms available to the unnamed class members can provide adequate relief." *Accord Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1161 (9th Cir. 2013) (holding that the "incentive awards significantly exceeded in amount what absent class members could expect upon settlement approval" and thus "created a patent divergence of interests between the named representatives and the class.").

> This case falls into the latter scenario. The $1000-per-child payments
> provided a *disincentive* for the class members to care about the
> adequacy of relief afforded unnamed class members, and instead
> encouraged the class representatives "to compromise the interest of the
> class for personal gain." *Hadix*, 322 F.3d at 897. The result is the
> settlement agreement in this case. The named plaintiffs are inadequate
> representatives under Rule 23(a)(4), and the district court abused its
> discretion in finding the contrary.

*Id.* (emphasis in original); *see also Shane Group*, 825 F.3d at 310-11 (expressing concern with district court's approval of "incentive awards" to named plaintiffs). Other courts in this District have similarly voiced concerns over "incentive awards" to class representatives and either refused, or at least reduced, such awards. *See, e.g., Bowman v. Art Van Furniture, Inc.*, No. 17-11630, 2018 WL 6444514, at *4 (E.D. Mich. Dec. 10, 2018) (Edmunds, J.) (finding $5,000 incentive award, which was more than 50 times the amount of any other class member, excessive and approving a $2,000 incentive award instead, in case with a $5.875 million settlement fund); *Machesney*, 2017 WL 2437207, at *11-12 (Cox, J.) (finding that "it appears that the sole named plaintiff … has essentially been 'bought off'—she is getting an award that is thirty times more than the maximum award that any class member could ever get under the settlement, in exchange for her not objecting to the large attorney fee award requested by Plaintiff's Counsel"); *Coulter-Owens v. Rodale, Inc.*, No. 14-12688, 2016 WL 5476490, at *7 (E.D. Mich. Sept. 29, 2016) (Cleland,

J.) (reducing $5,000 incentive award to $2,000 so that plaintiff will not "go essentially without compensation for her work on behalf of the class").

This Court finds that the proposed $10,000.00 incentive award is excessive because it is at least 100 times greater than what Plaintiff's fellow class members will recover and thus would make Plaintiff far more than "whole." However, to avoid the named Plaintiff going essentially without compensation for its work on behalf of the class, the Court will award an incentive payment instead of $1,000.00. The Court believes that this amount fairly compensates Plaintiff for its efforts in this litigation and adequately incentivizes others to serve as class representatives in similar cases.

Therefore, upon reviewing the Settlement Agreement and the parties' Joint Motion, and the matter having come before the Court for hearing on January 16, 2020, the Court finds that the proposed settlement is a fair, reasonable, and adequate resolution of the parties' dispute and HEREBY ORDERS as follows:

1. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the settlement of this action, as embodied in the terms of the Settlement Agreement attached to the Joint Motion, is hereby preliminarily approved as a fair, reasonable, and adequate settlement of this case in the best interests of the Settlement Class in light of the factual, legal, practical, and procedural considerations raised by this case. The Settlement Agreement is incorporated by reference into this Order (with

capitalized terms as set forth in the Settlement Agreement), with the exception that the "Incentive Award" to Plaintiff in paragraph 10 of the Agreement is reduced from $10,000.00 to $1,000.00.

2.      Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, by stipulation of the parties, and for the purpose of settlement, the Court hereby certifies the following Class, also referred to as "Settlement Class":

> <u>Class</u>: All persons who paid any registration or inspection fee to the City of Inkster under the City's Rental Dwellings or Rental Units section of its Building Regulations Code from December 7, 2014 through the date of the Order Preliminarily Approving the Settlement and Settlement Class.

Excluded from the Settlement Class are Defendants, including any of their parents, subsidiaries, affiliates or controlled persons, as well as its officers, directors, agents, servants, and employees, and the immediate family members of such persons. In the event the settlement contemplated under this Agreement does not receive final approval from the Court, the fact that the Parties stipulated to a settlement class shall not be used by any Party either in support or opposition of class certification in the Lawsuit.

3.      The Court finds that certification for purposes of settlement is appropriate because (a) the class is so numerous that joinder of all members is impractical; (b) there are questions of law and fact common to the Class and they predominate over any questions affecting only individual Class Members; (c)

Plaintiff's claims are typical of the claims of the Class; (d) Plaintiff and it's attorneys will fairly and adequately protect the interests of the Class; and (e) a class action is the superior means of resolving this controversy.

4.      The Court appoints Plaintiff, Garner Properties & Management, LLC, as the representative of the Settlement Class pursuant to Rule 23(a) and appoints its attorneys Aaron D. Cox and Mark K. Wasvary as Class Counsel pursuant to Rule 23(g).

5.      The Court finds that the Settlement Agreement's plan for Class Notice is the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23(e)(1) of the Federal Rules of Civil Procedure. That plan is approved and adopted. This Court further finds that the Class Notice (attached to the Settlement Agreement as Exhibit B), and the Claim Form included as part of the Class Notice, comply with Rules 23(e)(1) and 23(c)(2)(B) of the Federal Rules of Civil Procedure.

6.      By this Order, the Court hereby orders that the Class Notice shall be mailed to the last known address of Class Members as provided by Defendants via postcard or first-class mail, whichever is more practical. The Settlement Agreement, Class Notice and Claim Form shall also be made available on the Class Counsel's website. The Court finds and orders that no other notice is necessary.

7.     The Court hereby sets deadlines and dates for the acts and events set forth in the Settlement Agreement and directs the Parties to incorporate the deadlines and dates in the Class Notice:

(a)     The Class Notice must be mailed within 28 days of the entry of this Order.

(b)     Class members must submit a Proof of Claim to the Claims Administrator within 60 days of the last mailing of the Class Notice;

(c)     Objections and motions to intervene shall be filed in this Court and postmarked and served on Class Counsel and Defendants' counsel within 60 days of the last mailing of the Class Notice, or be forever barred;

(d)     Class Counsel must file a motion for final approval of class action settlement on or before May 29, 2020. That motion must address any objections that were filed, and it must set forth: (1) the total number of Members who responded; (2) the total number of claims made; and (3) the amount available to pay each valid Class Member claim based on a pro-rated formula (e.g., if the claims exceed the amount available in order to pay $100.00 per valid claim, each Class Member claim will receive an equal percentage of the money available to pay valid claims).

(e)     Class Counsel shall file a motion for approval of attorney's fees and incentive fees to named Plaintiff on or before May 29, 2020 and provide the

Court with detailed documentation in support of its fee request, and for any and all costs to be deducted from the Settlement Fund corpus.

(f)     Defendants shall file proof of compliance with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), no later than 21 days after entry of this Order; and,

(g)     The Parties shall incorporate the dates of this Order into the Class Notice.

(h)     The Fairness Hearing, set forth in the Class Notice, is hereby scheduled for **Thursday July 9, 2020 at 2:30 p.m.**

IT IS SO ORDERED.

Dated:  January 17, 2020                              s/Paul D. Borman
                                                                Paul D. Borman
                                                                United States District Judge