UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

GARNER PROPERTIES &
MANAGEMENT, LLC,                          Case No. 17-cv-13960
CHRISTOPHER GARNER and
OLIVIA HEMARATANATORN          Paul D. Borman
                                                        United States District Judge
              Plaintiffs,

v.

CITY OF INKSTER, GINA
TRIPLETT, MCKENNA
ASSOCIATES, INC. and JIM
WRIGHT,

              Defendants.
_____/

## OPINION AND ORDER:
## (1) GRANTING PLAINTIFF'S UNOPPOSED MOTION IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT (ECF NO. 57), AND (2) GRANTING PLAINTIFF'S UNOPPOSED MOTION IN SUPPORT OF ATTORNEY FEES, COSTS AND INCENTIVE FEE (ECF NO. 55)

This is a class action on behalf of a class of residential property owners who

have been fined for failing to have a certificate of occupancy for a rental property

and who allege that the defendants violated certain due process rights related to the

administration of the city of Inkster's Building Regulations Code and its adoption of

the International Property Maintenance Code.  After engaging in formal discovery

1

and lengthy settlement negotiations, the parties reached a settlement and, on January 17, 2020, the Court granted the parties' joint motion for certification of a settlement class and preliminary approval of the settlement and class notice.  The Court conducted a Final Fairness Hearing using Zoom videoconference technology on August 13, 2020, at which counsel for Plaintiff and Defendants appeared.  For the reasons that follow, the Court GRANTS Plaintiff's Unopposed Motion in Support of Attorney Fees, Costs and Incentive Fees (ECF No. 55) and GRANTS Plaintiff's Unopposed Motion in Support of Final Approval of Settlement.  (ECF No. 57.)  A separate Order and Judgment is filed contemporaneously with this Opinion an Order.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiffs' First Amended Complaint

Plaintiffs filed a Class Action Complaint on December 7, 2017 and an Amended Class Action Complaint on August 23, 2018.  (ECF Nos. 1, 33.)  Plaintiffs bring this class action "on behalf of a class of persons who own residential real property in the City of Inkster (the "City") and have been fined for failing [to] have a certificate of occupancy for a rental property."  (ECF No. 33, First Amended Complaint ("FAC") ¶ 1.)  Plaintiffs allege that under the Home Rule City Act (Mich. Comp. Laws §§ 117.1 *et seq*.), municipal entities like the City are empowered to adopt certain laws, codes, or rules for building maintenance control in their

2

jurisdictions.   (*Id.* ¶ 2.)   Pursuant to this authority, the City has adopted the International Property Maintenance Code ("IPMC") through City Ordinance § 150.001, to regulate and govern "the conditions and maintenance of all property, buildings and structures[] by providing the standards for supplied utilities and facilities and other physical things and conditions essential to ensure that structures are safe, sanitary and fit for occupation and use . . . ." (*Id.* ¶¶ 5-6) (quoting Ordinance § 150.001.)   The Ordinance provides "for the issuance of permits and collection of fees" and directs that a "Building Official shall be designated as the code official and shall be the official in charge of the enforcement" of the "City Code" that adopts and embodies the provisions of the IPMC.   (*Id.* ¶ 6.)   The Code provides that "[a]ny person who shall violate a provision of this Code . . . shall be guilty of a misdemeanor and shall be liable for a fine of not less than $100 nor more than $500."   (*Id.*)   This "Code," i.e. the IPMC as adopted by the City of Inkster, "governs the regulation of maintaining existing residential real property within the City."   (*Id.* ¶ 7.)

Plaintiffs further allege that the City has enacted other ordinances that regulate the operation of rental housing within the City that require an owner of investment real estate who wants to rent property to register the property, obtain an inspection of the property, complete necessary repairs under the applicable code, and thereafter obtain a certificate of compliance.   (*Id.* ¶ 9.)   Inspections under these ordinances are

performed by a "Code Official" who has been trained in these codes and ordinances and who "knows, or should know, the requirements of the IPMC and other applicable codes." (*Id.* ¶ 10.) The City's inspection under these ordinances is governed by the City's adoption of the IPMC, and inspection requires compliance with the IPMC such that an owner of rental property cannot obtain a certificate of compliance from the City until he or she passes an inspection pursuant to the IPMC. (*Id.* ¶ 11.)

Plaintiffs allege that the IPMC contains its own set of procedural guidelines, but that the City refuses to comply with them and instead issues civil infraction fines and misdemeanor violations to the owners for failure to bring properties in compliance with the IPMC by issuing tickets for failing to obtain a certificate of occupancy under the City's local ordinances, without regard to the Notice requirements of the IPMC, specifically including the right to appeal. (*Id.* ¶¶ 12, 19-20.) Unaware of their right to appeal, these homeowners and non-owners are forced to succumb to the power of the City and City Officials and pay countless fines and/or perform unnecessary repairs. (*Id.* ¶¶ 25-29.) Failing to inform the property owners of their right to appeal the code officials' determinations under the IPMC has removed any possibility for raising a challenge by the homeowner to the code official's determination or interpretation of the IPMC. (*Id.* ¶ 31.) The only option

4

for the homeowner is going to court after the violation has issued and the fine or penalty imposed, at which point the homeowner can no longer contest the code officials' determination because the IPMC deems the failure to obtain a certificate of occupancy as a strict liability offense.  (*Id.* ¶¶ 31-33.)

Plaintiffs' allegations essentially group into three separate claims: (1) deprivation of due process by property owners for failure to notify them of their right to appeal and failure to maintain a board of appeals to hear appeals from code violations and to enforce the stay provision of the IPMC; (2) deprivation of due process, and Fourth Amendment violation for lack of probable cause, by individual members of certain property management business entities (LLCs and corporations) who are not property owners and are being personally charged with criminal violations when the City (and Triplett individually) have knowledge that these individuals are simply "members" or "employees" of a property management company and are not the legally responsible entity; and (3) unconstitutionality, both facial and as applied, of provisions of the Inkster City Code that permit home inspections without a warrant or reasonable suspicion for the purpose of detecting code violations.

**B.      Procedural Background**

The parties filed their Original Class Action Complaint on December 7, 2017. (ECF No. 1.) Defendants subsequently filed motions to dismiss (ECF Nos. 18, 20), which were granted in part and denied in part, with leave to amend Count I of the Complaint.  (ECF No. 32.)  During that time, the Court also entered a Stipulation and Order for Preliminary Injunction enjoining the City of Inkster from issuing any criminal or civil charges under the City's Building and Housing codes and ordinances to any individual or entity who is not the owner of record for the alleged offending property. (ECF No. 27.)  On August 23, 2018, Plaintiffs filed their First Amended Complaint.  (ECF No. 33.)

The parties subsequently engaged in formal discovery and commenced multiple, formal settlement negotiations, including with the assistance of facilitation with United States District Judge Victoria A. Roberts.  A settlement was reached on June 13, 2019, and the terms of the settlement were placed on the record.  (06/13/19 Minute Entry.)

On January 17, 2020, the Court granted preliminary approval of the proposed Settlement Agreement, preliminarily certified a Settlement Class, and approved the form and manner of Notice proposed by the parties.  *Garner Prop. & Mgmt., LLC v.*

*City of Inkster*, 333 F.R.D. 614 (E.D. Mich. 2020).[1]   The "Settlement Class" is

defined as:

> Class:  All persons or entities that paid any registration or inspection
> fee to the City of Inkster under the City's Rental Dwellings or Rental
> Units section of its Building Regulations Code from December 7, 2014
> through the date of the Order Preliminarily Approving the Settlement
> and Settlement Class.

*Id.* at 618.   Excluded from the Settlement Class are commercial certificates of

compliance, as well as Defendants, including any of their parents, subsidiaries, and

affiliates, as well as their officers and directors.  *Id.* n.2.   The Court appointed

Plaintiff as the Class Representative and Plaintiff's attorneys (Aaron D. Cox of

Aaron D. Cox, PLLC and Mark K. Wasvary of Mark K. Wasvary, P.C.) as Class

Counsel for the Settlement Class.  *Id.* at 629.   Defendants agreed to make available

a total of $130,000.00 (the "Settlement Fund") to pay valid class member claims, to

pay a $1,000 incentive payment to Plaintiff, and to pay attorney's fees and

reasonable litigation expenses to Class Counsel, as approved by the Court.  *Id.*  In

addition to the monetary relief, the Settlement Agreement requires that if an

---

[1] Garner Properties & Management, LLC is the only representative Plaintiff.  The
claims of Plaintiffs Christopher L. Garner and Olivia Hemaratanatorn have been
resolved via an Offer of Judgment from the City of Inkster under Fed. R. Civ. P. 68.
In addition, Defendant Gina Triplett has been dismissed with prejudice.  *Garner*,
333 F.R.D. at n.1.

inspection of a rental property is refused, the City of Inkster shall seek an administrative warrant for such inspection. *Id.* The Court also established a date of July 9, 2020 for the Final Fairness Hearing. *Id.* That date was subsequently amended to August 13, 2020. (ECF No. 58, Re-Notice to Appear.)[2]

In accordance with the Court's January 17, 2020 Order, the Class Notice and Claim Form were mailed to the last known address of 4,185 Class members, and, according to Plaintiff, the Notice and Claim Form were also posted on Class Counsel's website. (Pl.'s Mot. Final Approv. at p. 2, PgID 898, and ECF No. 57-2, Ex. B, Declaration of Dorothy Sue Merryman, PgID 921-27.) No objections to the proposed Settlement Agreement have been filed with the Court and there was only one request for exclusion from the Class. (ECF No. 57-3, Ex. C to Pl.'s Mot. Final Approv., Affidavit of Mark K. Wasvary, ¶ 2, PgID 929.)

---

[2] The Class Notice mailed to Class Members expressly advised:

> The Court will hold a final fairness hearing to decide whether to approve the settlement on July 9, 2020, at 2:30 p.m., in Room 717 in the United States District Court for the Eastern District of Michigan, Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit MI 48226. At that hearing, the Court will hear any timely and properly-filed objections and arguments about the settlement. You are not required to attend this hearing unless you object to the settlement. *The hearing may be continued to a future date without further notice.*

(ECF No. 57-2, Notice, ¶ D, PgID 926 (emphasis added).)

Plaintiff has now filed two motions: (1) Plaintiff's Unopposed Motion in Support of Attorney Fees, Costs and Incentive Fee (ECF No. 55); and (2) Plaintiff's Unopposed Motion in Support of Final Approval of Settlement (ECF No. 57). For the following reasons, the Court GRANTS the motions.

## II.    ANALYSIS

Class actions in federal court are governed by Federal Rule of Civil Procedure 23 and class action suits may be settled only with the Court's approval. *See* Fed. R. Civ. P. 23(e). The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits. *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"); *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006) (noting "the general federal policy favoring the settlement of class actions"). "The evaluation and approval of a class settlement is committed to the sound discretion of the district court" and the district court "should approve a class settlement if, following a hearing, the court determines that the settlement 'is fair, reasonable, and adequate.'" *IUE-CWA*, 238 F.R.D. at 593-94. "In exercising that discretion, the Court may limit the fairness hearing to whatever is necessary to aid it in reaching an informed, just and reasoned decision" and "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits."

9

*International Union v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *21

(E.D. Mich. July 13, 2006) (internal quotation marks and citations omitted). "Given

that class settlements are favored, the role of the district court is 'limited to the extent

necessary to reach a reasoned judgment that the agreement is not the product of fraud

or overreaching by, or collusion between, the negotiating parties, and that the

settlement taken as a whole is fair, reasonable and adequate to all concerned." *IUE-*

*CWA*, 238 F.R.D. at 594 (citations omitted). "Settlement embodies a bargained give

and take between the litigants that is presumptively valid about which the Court

should not substitute its judgment for that of the parties." *Ford Motor Co.*, 2006 WL

1984363, at *21 (internal quotation marks and citation omitted).

## A.    The Settlement Class is Certified

To merit class certification, the Plaintiff must show that, as required under

Fed. R. Civ. P. 23(a), "(1) the class is so numerous that joinder of all members is

impracticable; (2) there are questions of law or fact common to the class; (3) the

claims or defenses of the representative parties are typical of the claims or defenses

of the class; and (4) the representative parties will fairly and adequately protect the

interests of the class." *In re Whirlpool Corp. Front Loading-Washer Prods. Liab.*

*Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (citing Fed. R. Civ. P. 23(a)). "These four

requirements—numerosity, commonality, typicality, and adequate representation—

serve to limit class claims to those that are fairly encompassed within the claims of the named plaintiffs because class representatives must share the same interests and injury as the class members." *Id*. (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "In addition to fulfilling the four prerequisites of Rule 23(a), the proposed class must also meet at least one of the three requirements listed in Rule 23(b)." *Id.* Where, as here, the Plaintiffs seek to certify a class under Rule 23(b)(3), the Plaintiffs must demonstrate 'that the questions of law or fact common to class members predominate over any questions affecting only individual members' and that the class action is 'superior to other available methods' to adjudicate the controversy fairly and efficiently." *Id*. at 850-51. "The plaintiffs carry the burden to prove that the class certification prerequisites are met, and the plaintiffs, as class representatives, [are] required to establish that they possess the same interest and suffered the same injury as the class members they seek to represent." *Id*. at 851 (internal citation omitted).

### 1. The class satisfies the requirements of Rule 23(a)

#### a. The class is sufficiently numerous

The Settlement Class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is a fact specific inquiry that turns upon such factors as geographic location and the ease of identifying class

11

members, but there is no strict numerical test to determine when the class is large enough or too numerous to be joined under the Federal Rules of Civil Procedure. *Senter v. General Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir. 1976); *Marquis v. Tecumseh Products Co.*, 206 F.R.D. 132, 156 (E.D. Mich. 2002). "Although not an absolute rule, it generally is accepted that a class of 40 or more members is sufficient to satisfy the numerosity requirement." *Crawford v. TRW Auto. U.S. LLC*, No. 06-cv-14276, 2007 WL 851627, at *3 (E.D. Mich. Mar. 21, 2007).

Notice was mailed to 4,185 Settlement Class Members. (Merryman Decl. ¶ 9.) The numerosity requirement of Rule 23(a)(1) is met here. *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (recognizing that "while there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement); *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n.1 (6th Cir. 1997) (finding objection based on numerosity frivolous where class consisted of 1,100 members).

### b.   Common questions of law or fact exist

Rule 23(a)(2) requires that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality looks to the questions of law or fact "among the class members generally," 1 <u>Newberg on Class Actions</u> § 3:26 (5th ed. 2018) and seeks "to generate common answers apt to drive the resolution of the

litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)) (emphasis omitted).  This provision does not demand that all questions of law and fact raised in the complaint are common, but simply requires a common question or law or fact.  *Olden v. LaFarge Corp.*, 203 F.R.D. 254, 269 (E.D. Mich. 2001), *aff'd*, 383 F.3d 495 (6th Cir. 2004).  A common question of law or fact exists when it can be shown that all class members suffered the same injury. *Dukes*, 564 U.S. at 349–50.  Class claims must depend upon a common contention "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

Here, there are several common issues of law and fact, such as whether the City of Inkster's alleged lack of procedure for obtaining an administrative search warrant under the Building and Building Regulations Code violates the Fourth Amendment, whether the City of Inkster failed to give proper notices to owners or managers of registered rentals pursuant to its adoption of the IPMC, and whether the City of Inkster is obligated to reimburse and pay restitution to Plaintiff and members of the class.  The commonality requirement is met.

13

### c.      Plaintiff's claims are typical of the class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims and defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. Century Tel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (internal citation omitted). "[T]he commonality and typicality inquiries overlap to a degree, but commonality focuses on similarities, while typicality focuses on differences." *Merenda v. VHS of Michigan, Inc.*, 296 F.R.D. 528, 537 (E.D. Mich. 2013) (internal quotation marks and citation omitted).  In determining whether the requisite typicality exists, a court must inquire whether the interests of the named plaintiff are "aligned with those of the represented group," such that "in pursuing his own claims, the named plaintiff will also advance the interests of the class members."  *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996).  The typicality requirement is satisfied if the representative's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."  *Beattie,* 511 F.3d at 561.  "The premise of the typicality requirement is simply stated: as goes the

claim of the named plaintiff, so go the claims of the class." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

Here, the named Plaintiff's claims and those of any class members arise from the same course of conduct by Defendants and the claims all are based on the same legal theory: the alleged violation of the same ordinance and same due process claims. The typicality requirement is met.

### d.   Plaintiff is an adequate class representative

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "There are two criteria for determining whether the representation of the class will be adequate: 1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 524-25; *see also Dukes*, 564 U.S. at 348 (explaining that the class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only[, and thus] ... to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members."). "Thus, 'the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the

rest of the class.'" *In re Dry Max Pampers*, 724 F.3d 713, 721 (6th Cir. 2013) (quoting *Dewey v. Volkswagen AG*, 681 F.3d 170, 183 (6th Cir. 2012)). "These requirements are scrutinized more closely, not less, in cases involving a settlement class," because "'the need for the adequacy of representation finding is particularly acute in settlement class situations.'" *Id.* (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 795 (1995)).

These requirements are satisfied here as the claims and interests of the Plaintiff, a property manager that has registered residential rental properties within the City of Inkster and paid fees under the City's ordinance and thus has suffered the same type of alleged damage as the class, are same as those of the absent class members, and the vigorous prosecution of the action has been established by Class Counsel's conduct in the case to date.

### 2. Rule 23(b)(3)'s requirements are satisfied

In addition to satisfying the Rule 23(a) requirements, Plaintiff must show that the proposed class is one of the varieties listed in Rule 23(b). Plaintiff claims the class is of the Rule 23(b)(3) type.

To certify a Rule 23(b)(3) class, "(1) questions common to the class [must] predominate over questions affecting only individual members, and (2) class resolution [must be] superior to alternative methods for adjudicating the

controversy." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008). "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352-53 (6th Cir. 2011) (citing *Beattie*, 511 F.3d at 564). "A plaintiff class need not prove that each element of a claim can be established by classwide proof." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 858 (6th Cir. 2013).   Moreover, class certification is superior to alternative methods of adjudicating the controversy where "class members are not likely to file individual actions [because] the cost of litigation would dwarf any potential recovery." *Id.* at 861.   Factors that bear on the predominance and superiority inquiries in the settlement context include the class members' interest in maintaining a separate action, other currently-pending litigation concerning the controversy, and the desirability of concentrating the litigation in a particular forum. *See* Fed. R. Civ. P. 23(b)(3)(A)–(C); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (providing that for settlement-only class certification, a court need not concern itself with Rule 23(b)(3)(D)'s intractable-management-problems factor).

17

"In addition, Rule 23(b)(3) classes must also meet an implied ascertainability requirement." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017) (citing *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016)). That is because, "unlike (b)(1) and (b)(2) classes, (b)(3) class members are entitled to notice and are able to opt-out of the class." *Cole*, 839 F.3d at 541. "In the Rule 23(b)(3) context, ascertainability aids the inherent efficiencies of the class device by ensuring administrative feasibility, and ... ascertainability is a requirement tied almost exclusively to the practical need to notify absent class members and to allow those members a chance to opt-out and avoid the potential collateral estoppel effects of a final judgment." *Id.* "[T]he ascertainability requirement ... necessitate[s] 'a class description [that is] sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Id.* (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012)).

The class members' claims all share the same question of law and fact – whether or not the Settlement Class was subject to due process and Fourth Amendment violations and is entitled to reimbursement. In addition, the interest of members to individually control the litigation is low because the costs of the suit is prohibitive to bringing individual actions, no other litigation has been commenced

against Defendants, and it is desirable to concentrate the claims in this judicial district, as all claims arise in the City of Inkster, located within the Eastern District of Michigan.  Thus, the predominance and superiority requirements of Rule 23(b)(3) have been met.

Accordingly, the Court finds that the Settlement Class satisfies the requirements of Rule 23(a) and 23(b)(1) and accordingly CERTIFIES the Settlement Class.

### B.    The Notice Was Reasonable

Fed. R. Civ. P. 23(e)(2) requires that notice is directed in a reasonable manner to all class members that would be bound by the settlement.  Additionally, notice must comport with due process by being "reasonably calculated to reach interested parties." *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005).  Further, Rule 23(c) necessitates that notice is provided to the class regarding "the nature of the action; the definition of the class certified; the class claims, issues, or defenses; information on how a class member can enter an appearance with their lawyer; information on how class members can opt into or out of the settlement; and the binding effect of the settlement agreement."  Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).

In this case, notice was mailed to Class Members at their last known mailing address obtained from the city of Inkster's records.  (Merryman Decl. ¶¶ 4-9, PgID

19

922.)  The notice could be easily understood by the average prospective class member, and it adequately explained the terms of the settlement and proposed class members' options about opting out of the class.  (Notice, PgID 925-26.)  Further, the one-page Claim form was easy to read and understand, and each Settlement Class Member merely had to provide their contact information and then verify having a registered residential rental property during the class period, but did not have to provide any other documentation.  (Claim Form, PgID 927.)  The Court finds that this notice process was reasonable and adequate under the circumstances presented. *See Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 526 (E.D. Ky. 2010) (concluding that the notice process was adequate under Federal Rule of Civil Procedure 23 and the standards for due process).

Further, based on the February 5, 2020 submission by Defendants, the Court finds that notice was served on the appropriate federal and state officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715(b).  (ECF No. 52, Proof of Compliance with the Notice Requirements of The Class Action Fairness Act 2005 ("CAFA") § 1715(b) on Behalf of All Defendants, PgID 796-803.)

## C.    The Settlement Agreement is Fair, Reasonable and Adequate

Before approving a binding settlement, and after a final fairness hearing, the Court must conclude that it is "fair, reasonable, and adequate."  Fed. R. Civ. P.

23(e)(2).  Following a December 1, 2018 amendment, Rule 23(e)(2) now instructs

courts to consider certain factors when deciding whether the settlement meets this

standard:

> (A)   the class representatives and class counsel have adequately represented the class;
>
> (B)   the proposal was negotiated at arm's length;
>
> (C)   the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D)   the proposal treats class members equitably relative to each other.

In addition to the Rule 23(e)(2) factors, courts may also consider circuit-

specific factors in the analysis.  In the Sixth Circuit, those factors are "(1) the risk of

fraud or collusion; (2) the complexity, expense and likely duration of the litigation;

(3) the amount of discovery engaged in by the parties; (4) the likelihood of success

on the merits; (5) the opinions of class counsel and class representatives; (6) the

reaction of absent class members; and (7) the public interest." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). No single factor is determinative, and the Court should consider the factors relevant to the circumstances of each individual case. *In re Auto Parts Antitrust Litig.*, No. 2:17-cv-13005, 2018 WL 7108016, at *4 (E.D. Mich. Nov. 6, 2018).

First, considering the first two Rule 23(e) factors, the Court finds that the class representatives and class counsel have adequately represented the Settlement Class. The parties' attorneys are experienced class action litigators, certified as class counsel in multiple lawsuits against municipalities, and they engaged in formal discovery and motion practice, including motions to dismiss which were granted in part and denied in part, and commenced multiple, formal settlement negotiations. (Pl.'s Mot. Final Approv. at pp. 10-12 & fn. 3, PgID 906-08.) Further, the negotiations of the Settlement Agreement were conducted at arms-length with facilitative assistance from District Judge Victoria A. Roberts, after discussing the strengths and weaknesses of the claims and defenses, and the terms of the Settlement Agreement were placed on the record on June 13, 2019. (*Id.* at p. 9, PgID 905.)

Considering the third factor, the settlement is adequate because all Class Members were able to make a claim to recoup money and the City of Inkster has agreed to comply with notice requirements under Inkster's enacted version of the

22

IPMC and to have a procedure to seek an administrative warrant when an inspection under its Building Code is refused.  (*Id.* at pp. 12-13, PgID 908-09.)  The parties recognize the risk of establishing liability and damages and the cost, complexity and likely duration of protracted litigation and trial if the settlement is not consummated. (*Id.* at p. 10, PgID 906.)  And, as discussed *infra*, the amount of attorney's fees and costs is within the reasonable range in a common fund fee award.

Finally, the class members are treated equitably relative to each other.  Each class member will receive a cash payment of $100.00 for each registered residential rental property or a *pro rata* share of the Settlement Fund after the other payments required by the Settlement Agreement.   (*Id.* at pp. 12-13, PgID 908-09.) Accordingly, the Rule 23(e) factors support that the settlement is fair, reasonable, and adequate.

Considering the Sixth Circuit factors, the Settlement Agreement was the result of arms-length negotiations by qualified counsel, reached only after discovery on the merits, and with the parties' understanding of the strengths and weaknesses of their respective positions, and there is no indication that there was any fraud or collusion. (*Id.* at p. 9, PgID 905.) "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker v. Chesapeake*

*Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010) (citing *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008)).

The complexity, expense, and likely duration of litigation weigh in favor of settlement.  Settlement allows the parties and the Class to avoid the burden and expense of trial, expensive discovery, and protracted motions practice.  Had this case proceeded, Defendants would have contested class certification and the merits based upon governmental immunity among other defenses.  (Pl.'s Mot. Final Approv. at p. 10, PgID 906.)

The parties previously engaged in formal discovery to identify class members and exchanged documents and data sufficient for the parties to evaluate potential claims and make an informed decision prior to agreeing on the settlement terms.  (*Id.* at pp. 10-11, PgID 906-07.)

The Court "cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement."  *UAW*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 (1981)).  However, in determining whether the relief offered in a settlement outweighs the plaintiff's chances of ultimate success on the merits, the Court "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to

24

completion." *IUE-CWE*, 238 F.R.D. at 594.  The Court "is not to decide whether one side is right or even whether one side has a better of these arguments….. The question rather is whether the parties are using settlement to resolve a legitimate legal and factual dispute." *UAW*, 497 F.3d at 632.  The parties here recognize the risks and expenses involved in litigating this action, including the high costs of pursuing an appeal, if necessary, and have determined that this Settlement is a fair, reasonable, and adequate result for the Class, in which every class member can recover damages (or a *pro rata* share) by submitting a simple one-page claim form. (*Id.* at p. 11, PgID 907.)

Class counsel and the Class Representative believe that the settlement amount is reasonable, especially in light of the risks of litigating the claims.  (*Id.* at pp. 11-12, PgID 907-08.)  The judgment of class counsel that settlement is in the best interest of the class "is entitled to significant weight, and supports the fairness of the class settlement."  *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *18 (E.D. Mich. Oct. 18, 2010).  As explained above, Class Counsel are experienced class action litigators and believe that the benefits of settlement outweigh the risk of continued litigation and the costs that would be incurred.

The reaction of absent class members weigh in favor of the settlement. Of the 287 timely and valid claims by class members, representing 703 properties (and eight late but otherwise valid claims), no class member objected to the settlement and only one request for exclusion was received. (Merryman Decl. ¶¶ 11-12, PgID 923.) "A certain number of opt-outs and objections are to be expected in a class action. If only a small number are received, that fact can be viewed as indicative of the adequacy of the settlement." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003).

Finally, the public interest also weighs in favor of settlement. (Pl.'s Mot. Final Approv. at p. 13, PgID 909.) "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (internal citations and quotations omitted). There do not appear to be any countervailing public interests that would suggest that the Court should disapprove the Settlement Agreement, and allowing settlement in this matter will promote the fair and expeditious resolution of the matter.

The Court therefore approves the Settlement as fair, reasonable and adequate.

**D.      Plaintiff's Unopposed Motion for Attorney's Fees (ECF No. 55)**

Under the terms of the Settlement Agreement, Class Counsel will be paid 1/3 of the Settlement Fund ($43,333.33) as attorneys' fees, plus their out-of-pocket litigation expense of $9,722.51, subject to Court approval. *Garner*, 333 F.R.D. at 620, 629.

Rule 23(h) of the Federal Rules of Civil Procedure allows for "reasonable attorney's fees and nontaxable costs that are authorized by law or parties' agreement." Fed. R. Civ. P. 23(h). A common fund award is appropriate when "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lumpsum judgment recovered on his behalf." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980) ("[T]his Court has recognized consistently that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). In determining the amount of fees in common fund cases, the Court may use either the lodestar method or percentage of the fund method. *Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993) ("In this circuit, we require only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances."). The rationale for a percentage of the fund award is "the equitable notion that those who benefit from

27

the creation of a fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

Plaintiff here employs the percentage of the fund method and Class Counsel requests an award of $43,333.33 in attorneys' fees, which represents 33% of the $130,000.00 Settlement Fund. (ECF No. 55, Pl.'s Mot. Att. Fees.) This requested fee is unopposed, is consistent with standard fee awards in class actions generally, and there is authority supporting the proposition that awarding proportional attorney fees of around one third of a settlement fund is not an abuse of discretion. *See, e.g., Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012) ("The 'majority of common fund fee awards fall between 20% and 30% of the fund.'"); *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351-52 (6th Cir. 2009) (noting in *dicta* that a 30% attorney fee of $1.335 million out of a total settlement figure of $4.45 million was not facially "unreasonable"); *Hillson v. Kelly Servs. Inc.*, No. 2:15-cv-10803, 2017 WL 279814, at *9 (E.D. Mich. Jan. 23, 2017) (Michelson, J.) (finding plaintiffs' anticipated attorneys' fee request of 33% of the settlement fund, or approximately $2.25 million, "in the ballpark of a reasonable award" for purposes of preliminary approval); *American Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, No. 09-01162, 2016 WL 6272094, at *3 (W.D. Mich. Mar. 1, 2016)

28

(determining that a 30% attorney fee of $800,000 out of a total settlement figure of $2,400,000 was reasonable); *In re Rio Hair Naturalizer Prods. Liab. Litig.*, MCL No. 1055, 1996 WL 780512, at *16 (E.D. Mich. Dec. 20, 1996) (Rosen, J.) (observing that "more commonly, fee awards in common fund cases are calculated as a percentage of the fund created, typically ranging from 20 to 50 percent of the fund").

In evaluating whether the fee requested is reasonable, courts often, "but by no means invariably," analyze a host of factors in deciding whether a particular percentage of the fund is a reasonable award of attorney's fees. *See Moulton v. United States Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (listing six factors); *Barnes v. City of Cincinnati*, 401 F.3d 729, 746 (6th Cir. 2005) (listing twelve factors). The key factors are "the results counsel achieved for the class," "the risks that they bore doing so," and "the quality of their work in light of the complexity of the case." Newberg on Class Actions § 15:77 (5th ed.).

Considering these factors, Class Counsel's efforts have rendered a substantial benefit to the Class. Class Members will each receive a cash payment of $100.00 for each registered residential property after the other payments required by the Agreement, and this lawsuit also achieved equitable relief for the Class. Moreover, no Class Member has objected to the amount of recovery, and the Class Notice

29

informed the Settlement Class about the attorney's fees and no Class Member has objected to the fee. (Pl.'s Mot. Atty. Fees at p. 6, PgID 821.)

Plaintiff also explains that Class Counsel took this case on a contingency basis and thus "faced risk of nonpayment, not only for their time, but also for their out-of-pocket costs." (*Id.* at p. 7, PgID 822.) Thus, the risk Class Counsel undertook in pursuing this litigation militates in favor of a fee award

Counsel's quality of work in this case was good. Class Counsel assert that they have been litigating class actions against municipalities for years and "were able to apply their unique capabilities to achieve an excellent result in a fair and efficient manner." (*Id.*) Further, Class Counsel states that they have devoted over 140 hours to this lawsuit. (*Id.* citing Ex. A, ECF No. 55-2, Fee Statements.) $43,333.33 in attorney fees, for 140 hours of work, equates to a billing rate of approximately $309.00 per hour, which does not appear unreasonable in this jurisdiction. *See* State Bar of Michigan, Economics of Law Practice Attorney Income and Billing Rate Summary Report (2017). Accordingly, the Court finds that $43,333.33 in attorney's fees is reasonable under the circumstances of this case.

Plaintiff also seek reimbursement of their out-of-pocket litigation expenses in the amount of $9,722.51. (Pl.'s Mot. Atty. Fees. Ex. B, ECF No. 55-3, Pl.'s Costs.) These expense amounts represent:

- $400.00 Complaint filing fee

- $302.51 for Westlaw research costs

- $45.00 courier fee

- $8,975.00 Expense for Claims Administrator

(Pl.'s Mot Atty. Fees at p. 8, PgID 823, citing Ex B, Pl.'s Costs.)  These expense amounts are documented by firm and by category of expense, are unopposed, and appear reasonable.  (ECF No. 55-3, Pl.'s Costs.)

Finally, Plaintiff seeks an award of $1,000.00 as an incentive payment for serving as the Class Representative, as previously determined by this Court in its Opinion and Order preliminarily approving the settlement class, "to avoid the named Plaintiff going essentially without compensation for its work on behalf of the class[.]"  *Garner*, 333 F.R.D. at 628.[3]  Similar awards have been approved by the Sixth Circuit.  *See Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) ("Incentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit.").  As this Court previously found, the $1,000.00 award "fairly compensates Plaintiff for its efforts in this litigation and adequately

---

[3] Plaintiff originally proposed an incentive award of $10,000.00, which this Court found excessive and reduced to $1000.00.  *Garner*, 333 F.R.D. at 628.

incentivizes others to serve as class representatives in similar cases." *Garner*, 333 F.R.D. at 628.

## IV.   CONCLUSION

For the foregoing reasons, and as set forth in the accompanying Order and Judgment filed herewith this day, the Court (1) **GRANTS** Plaintiff's Unopposed Motion in Support of Final Approval of Settlement (ECF No. 57) as fair, reasonable and adequate, (2) **GRANTS** final certification of the Settlement Class, (3) **GRANTS** Plaintiff's Unopposed Motion in Support of Attorney Fees, Costs and Incentive Fee (ECF No. 55), (4) **AWARDS** Plaintiff $43,333.33 in attorney's fees and $9,722.51 in expenses, and (5) **APPROVES** an incentive award to Plaintiff in the amount of $1,000.00.

IT IS SO ORDERED.


Dated: August 14, 2020                          s/Paul D. Borman
                                                Paul D. Borman
                                                United States District Judge

32